**James R. DILLMAN, et al, Appellants–Plaintiffs,**

v.

**TRUSTEES OF INDIANA UNIVERSITY, Appellees– Defendants.**

No. 53A01–0505–CV–247.

Court of Appeals of Indiana.

June 2, 2006.

Gojko Kasich, Hebron, Roy Graham, Bloomington, for Appellants.

Ellen E. Boshkoff, Scott D. Himsel, Baker & Daniels, Indianapolis, for Appellees.

## OPINION

MATHIAS, Judge.

James R. Dillman, et al ("Appellants") appeal from the Monroe Circuit Court's grant of summary judgment in favor of the Trustees of Indiana University ("Trustees"). Appellants raise the following combined and restated issues:

I.  Whether the trial court erred in determining that the Indiana Open Door Law did not apply to a gathering of less than a majority of the Trustees; and,

II. Whether the trial court erred in determining that the Indiana University President's decision to terminate the contract of a basketball coach was made pursuant to a delegation of authority by the Trustees and not subject to the Open Door Law.

Concluding that neither a gathering of less than a majority of the nine Trustees nor the university president's decision to terminate a contract were subject to the Open Door Law, we affirm.

### Facts and Procedural History

On July 27, 1982, Robert M. Knight ("Knight") and the Trustees entered into a contract whereby Knight agreed to serve as head coach of the Indiana University men's basketball team. Knight exercised an option to renew the contract on June 29, 1987. In 1991, an addendum was executed and the contract was extended until June 20, 2002. The employment agreement provided a detailed mechanism for Indiana University's President to remove Knight for cause. The agreement also permitted a no-cause removal, stating that

"[i]f University at any time desires, Coach [Knight] shall cease to serve as Head Basketball Coach when so advised in writing." Appellants' App. p. 110.

At a public meeting held on September 11, 1987, the Trustees passed a resolution which retained their authority to set policy, but delegated to the university president the "explicit authority ... to manage[ ] and administer the University." Appellants' App. pp. 123–24. Specifically, the resolution provided that "the Board hereby delegates to the President the authority of the Board as permitted by Indiana Code 20–12–1–4. The Authority so delegated shall also include that conferred by [ ] Indiana Code 20–12–23–2[ ], Indiana Code 20–12–1[ ], but subject to the exceptions and conditions stated in this Resolution." Appellants' App. p. 124.

On May 14, 2000, the Trustees held an executive session regarding Knight's continued employment at Indiana University. During that session, the Trustees and then Indiana University President Myles Brand ("President Brand") discussed possible sanctions and termination of Knight's employment with the University.

> On the morning of September 9, 2000, President Brand met informally with members of the Board of Trustees at his home in Bloomington prior to an I.U. football game in order to update them on an ongoing investigation into Knight's alleged battery of an I.U. freshman. They also discussed other instances of Knight's alleged misconduct and insubordination. President Brand first spoke with four of the Trustees, while four other Trustees waited in another room.[1] Rough-

ly thirty minutes after speaking with the first four Trustees, President Brand spoke with the remaining four Trustees. President Brand later explained in deposition testimony that he deliberately gathered with fewer than a quorum of the Trustees "to exclude any impropriety with respect to the Open Door Act." Appellants' App. p. 53. The following day, September 10, 2000, President Brand announced his decision to fire Knight pursuant to the no-cause removal provision of his employment agreement.

On October 2, 2000, Appellants filed a complaint against the Trustees in Monroe Circuit Court, alleging violations of the Open Door Law and requesting that the trial court void "any policy, decision or final action" of the Trustees "as it relates to the termination ... of Robert M. Knight."[2] Appellants' App. p. 17. On October 17, 2000, the Trustees moved for summary judgment. Appellants filed a cross-motion for summary judgment on April 23, 2001. On July 19, 2001, the trial court entered an order granting partial summary judgment in favor of the Trustees, finding that "the President of Indiana University had the authority to make, enforce and terminate contracts and thus had the authority to terminate the contract of Robert M. Knight." Appellants' App. p. 8.

On October 5, 2001, Appellants filed a second motion for summary judgment, arguing that they were entitled to summary judgment on the issues of whether the Trustees' May 14, 2000 executive session and their September 9, 2000 gatherings violated the Open Door Law. The Trustees also filed a second motion for summary

---

1. The ninth trustee was apparently out of the country. Appellants' App. p. 62.

2. The record before us does not contain the complaint; however, the trial court's Entry of

Summary Judgment quotes this language from the complaint and cites it as "Prayer, Count I Amended Complaint, ¶¶ 1, 3." Appellants' App. p. 17.

judgment. The trial court conducted a hearing on April 15, 2005. At that hearing, Appellants agreed to the dismissal of the portion of the complaint regarding the May 14, 2000 executive session. On May 4, 2005, the trial court issued findings and conclusions granting summary judgment in favor of the Trustees. This appeal ensued.

## Standard of Review

When reviewing a grant or denial of summary judgment our well-settled standard of review is the same as it is for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party.

*Monroe Guar. Ins. Co. v. Magwerks Corp.,* 829 N.E.2d 968, 973 (Ind.2005) (internal citations omitted).

## Discussion and Decision

### I. Meeting Under the Open Door Law

▪ First, Appellants argue that the trial court erred when it determined that the September 9, 2000 gatherings of the Trustees were not a meeting subject to the requirements of the Open Door Law.

The purpose of the Open Door Law is to assure that the business of the State of Indiana and its political subdivisions be conducted openly so that the general public may be fully informed. *Frye v. Vigo County,* 769 N.E.2d 188, 192 (Ind.Ct.App. 2002); Ind.Code § 5–14–1.5–1 (2002). We are to liberally construe the statute in

order to give effect to the legislature's intention. Ind.Code § 5–14–1.5–1. The Open Door Law requires that, except for those situations where an executive session is authorized, "all meetings of the governing bodies of public agencies must be open at all times for the purpose of permitting members of the public to observe and record them." Ind.Code § 5–14–1.5–3(a) (2002).

For purposes of the Open Door Law, a meeting is defined as "a gathering of a majority of the governing body of a public agency for the purpose of taking official action on public business." Ind.Code § 5–14–1.5–2(c) (2002 & Supp.2005). In addition, official action means to "(1) receive information; (2) deliberate; (3) make recommendations; (4) establish policy; (5) make decisions; or (6) take final action." Ind.Code § 5–14–1.5–2(d).

▪ Appellants assert that because "there is no specific language that requires that a majority of a political subdivision meet simultaneously in one room at the same time," the term meeting must be construed to include consecutive gatherings of less than a majority. However, the legislature has specifically defined "meeting" under the Open Door Law as "a gathering of a majority of the governing body...." Ind.Code § 5–14–1.5–2(c). Thus, without a majority present, no meeting occurs for purposes of the Open Door Law.

▪ Moreover, as the Trustees point out, a public agency cannot take official action subject to the Open Door Law without a quorum present. They direct us to caselaw from other jurisdictions which recognize that their open door laws do not apply when a quorum is not present. *See Auburn Univ. v. Advertiser Co.,* 867 So.2d 293, 301 (Ala.2003) ("The attendance of a quorum is a condition precedent to everything. Until then there is an absolute

incapacity to consider or act in any way upon any matter."); *Dewey v. Redevelopment Agency of City of Reno,* 119 Nev. 87, 64 P.3d 1070, 1078 (2003) (rejecting the argument that back-to-back briefings constituted a "constructive quorum" and holding when less than a quorum is present, private discussions and information gathering do not violate the Open Meeting Law).

The conduct of the I.U. Trustees was in direct contravention to the public policy behind the Open Door Law. While a more open process in matters of governance such as this might be preferable, the legislative branch of our state government has spoken. The law does not prohibit this conduct. Moreover and importantly, we know this because the General Assembly has repeatedly considered and declined to amend the Open Door Law to change the definition of a meeting to include a "series of at least two [ ] gatherings of members of the governing body ... attended by at least two [ ] members but less than a quorum ... [where] [t]he sum of the number of different members of the governing body attending any of the series of gatherings at least equals a quorum of the governing body." S.B. 0089, 114th Gen. Assem., 2d Reg. Sess. (Ind.2006). *See also* H.B. 1359, 109th Gen. Assem., 2d Reg. Sess. (Ind.1996). *See also* H.B. 1717, 110th Gen. Assem., 1st Reg. Sess. (Ind.1997);

H.B. 1726, 111th Gen. Assem., 1st Reg. Sess. (Ind.1999); H.B. 1738, 112th Gen. Assem., 1st Reg. Sess. (Ind.2001); S.B. 0319, 113th Gen. Assem., 2d Reg. Sess. (Ind.2004); S.B. 0310, 114th Gen. Assem., 1st Reg. Sess. (Ind.2005); H.B. 1221, 114th Gen. Assem., 1st Reg. Sess. (Ind.2005).

This repeated refusal to amend the definition makes clear the legislature's intent to preserve the meaning of the term "meeting" as it is written. *See Miller Brewing Co. v. Bartholemew County Beverage Co.,* 674 N.E.2d 193, 206 (Ind.Ct. App.1996), *trans. denied.* Therefore, we conclude that the trial court properly determined that the gatherings of less than a majority of the Trustees did not constitute a meeting subject to the Open Door Law.[3]

## II. Trustees' Delegation of Authority to the University President

■ Appellants also assert that the trial court erred in determining that the Trustees' delegation of authority to the Indiana University President took President Brand's decision to terminate Knight's employment out of the purview of the Open Door Law. Specifically, Appellants argue that the Trustees' 1987 resolution delegating the Board's authority under certain statutes was to then University President Thomas Erlich *personally.* Therefore, Appellants contend, "any authority that

---

3. In a related argument, Appellants assert that the trial court erred when it determined that, even had the gatherings constituted a meeting subject to the requirements of the Open Door Law, the Trustees were nonetheless entitled to summary judgment because there is no evidence of a "policy, decision or final action" of the Trustees relating to Knight's termination. Appellants' App. p. 20. As discussed above, the Open Door Law defines a meeting as "a gathering of a majority of the governing body of a public agency for the purpose of taking official action upon public business." Ind.Code § 5–14–1.5–2(c). " 'Official action' means to: (1) receive infor-

mation; (2) deliberate; (3) make recommendations; (4) establish policy; (5) make decisions; or (6) take final action." Ind.Code § 5–14–1.5–2(d). While the trial court correctly determined that there was no evidence of a "policy, decision or final action," we note that the undisputed evidence clearly demonstrates that the Trustees received information from President Brand. *See Simon v. City of Auburn, Ind., Bd. of Zoning Appeals,* 519 N.E.2d 205, 209 (Ind.Ct.App.1988) ("the Board undeniably received information—albeit in the form of legal advice from its attorney.").

may have been given to Thomas Erlich in 1987 is irrelevant to what happened in September of 2000." Br. of Appellants at 38.

We find this argument unpersuasive. Indiana Code section 20–12–1–4 provides that the Board of Trustees is

> authorized to employ such officers, faculty, employees, consultants and counsel as it may deem necessary or convenient to aid in the formulation and implementation of its policies and to execute its will within its particular institution. To such end[,][the] board may delegate to such persons and to others such authority as it may possess[.]

Ind.Code § 20–12–1–4 (1994). The minutes of the Trustees' September 11, 1987, public meeting demonstrate the Board's intention "to become more actively and deeply involved in the substantial policy issues" affecting the university. Appellants' App. p. 123. In order to "streamline the Board's operations[,]" the Trustees delegated to the "President of the University" their administrative authority under Indiana Code chapter 20–12–1. Appellants' App. pp. 123–29. By using this language, the Trustees clearly delegated their authority to the person holding the office of president of the university, and not to Thomas Erlich personally. Included in this delegated administrative authority is the power "to govern, by lawful means, the conduct of its students, faculty, and employees[.]" Ind.Code § 20–12–1–2(a)(3) (1994 & Supp.2005).

■ Appellants also argue that the Trustees' delegation of administrative authority to the university president constitutes "a delegation to a committee of one" and should thus be subject to the Open Door Law. Br. of Appellants at 34. In support of this argument, they rely on *Riggin v. Board of Trustees of Ball State University*, 489 N.E.2d 616 (Ind.Ct.App.

1986), *trans. denied*, in which this court held that the Open Door Law applied to a five-member ad hoc committee which reviewed a decision to discharge a tenured professor. However, this case is distinguishable. As the Trustees point out, the Open Door Law applies to meetings of governing bodies, which are defined as "two [ ] or more individuals" constituting "a board, a commission, an authority, a council, a committee, a body, or other entity[.]" Ind.Code § 5–14–1.5–2(b). Thus, the Open Door Law does not apply to the decisions of a properly-authorized individual university officer.

## Conclusion

The trial court properly entered summary judgment in favor of the Trustees.

Affirmed.

ROBB, J., and VAIDIK, J., concur.