LAKE COUNTY TRUST COMPANY, Trustee under Trust Agreement dated November 1, 2002 and known as the DSK Family Trust No. 5400; Lake County Trust Company, Trustee under Trust Agreement dated December 18, 2002 and known as Trust No. 5390; Lake County Trust Company, Trustee under Trust Agreement dated February 18, 2003 and known as P & M Land Trust No. 5444; Thomas N. Simstad, Marla K. Simstad and Kenneth Bachorski, Appellants–Petitioner,

v.

ADVISORY PLAN COMMISSION OF LAKE COUNTY, INDIANA, Appellee–Respondent.

No. 37A03–0705–CV–230.

Court of Appeals of Indiana.

March 20, 2008.

Stephen M. Maish, Patrick A. Mysliwy, Maish & Mysliwy, Hammond, IN, Attorneys for Appellants.

Anthony W. Overholt, Maggie L. Smith, Locke Reynolds, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

SHARPNACK, Judge.

Lake County Trust Company, Trustee under Trust Agreement Dated November 1, 2002 and Known as the DSK Family Trust No. 5400, et al. ("Trust Company"), appeals the trial court's order concluding that the Advisory Plan Commission of Lake County ("Plan Commission") acted in bad faith but is immune from sanctions. Trust Company raises two issues, which we revise and restate as:

I. Whether the trial court erred by concluding that the Plan Commission is immune from the imposition of sanctions under Ind. Alternative Dispute Resolution Rules 2.7 and 2.10; and

II. Whether Trust Company may recover attorney fees under Ind.Code § 36–7–4–1010(a).

On cross appeal, the Plan Commission raises three issues, which we consolidate and restate as:

II. Whether the trial court erred when it concluded that the Plan Commission acted in bad faith.

We affirm in part and reverse in part.

The relevant facts follow. In 2004, Trust Company, seeking to develop a parcel of land as a residential subdivision, filed an Application for Primary Subdivision Approval with the Plan Commission requesting primary plat approval. The Plan Commission denied primary approval, and on December 15, 2005, Trust Company filed a Verified Petition for Writ of Certiorari with the Lake County Superior Court seeking judicial review of the Plan Commission's decision. On June 5, 2006, the trial court ordered the parties to mediate.

On July 24, 2006, after mediation, the parties signed a settlement agreement, which provided in part:

[Trust Company] shall submit a clean revised primary and sketch plan encompassing all of the agreements set forth [in the settlement agreement] and the [Plan Commission] shall at its next regular meeting, August 16, 2006, or a special meeting to be called sooner and before August 4, 2006, shall [sic] approve this agreement and its engineering[.]

Appellant's Appendix at 66. On August 1, 2006, Trust Company submitted a clean, revised primary and sketch plan purporting to encompass "all of the agreements that were called for in [the] settlement agreement." September 6, 2006 Hearing Transcript at 21. However, at the meeting on August 16, 2006, the Plan Commission failed to approve the plan, deciding instead to defer its decision. Days later, Trust Company filed its Motion to Enforce Mediated Settlement Agreement and requested costs and attorney fees from the mediation.

On September 6, 2006, at a hearing on the motion, an attorney who had repre-

sented the Plan Commission at the mediation argued that attorneys of a public body under Indiana's Open Door Law are authorized only to "go to the mediation and to take back to a public body the recommendation [of a settlement agreement] and receive its vote." *Id.* at 25. The Plan Commission produced evidence that its attorneys had informed the Trust Company's attorneys that any agreement reached would have to "be approved by the Plan[ ] Commission in an executive Session and then in a public meeting." *Id.* at 44. The Trust Company, on the other hand, argued that the Plan Commission's attorneys had the authority to bind it to a settlement and noted that the settlement agreement the parties signed made no mention of Indiana's Open Door Law, providing instead that the Plan Commission "shall[ ] approve" the settlement agreement. *Id.* at 30. A trustee of the Trust Company testified that a Plan Commission attorney had informed him that the Plan Commission attorneys had "authority to settle" and that they would "have to have a public meeting where ... the Board will let the public know that [the parties] reached a settlement ... and they will have to approve it." *Id.* at 13–14. The Trust Company produced a letter dated July 11, 2006, from the Plan Commission's attorneys, which stated, "[we] also have full and complete settlement authority at this time to discuss a resolution of this matter." Appellant's Appendix at 121. Trust Company also produced an email sent on July 20, 2006, in which an attorney for the Trust Company asked, "Did you get settlement authority?" January 12, 2007 Hearing Respondent's Exhibit F. An attorney for the Plan Commission responded, "Yes. We are prepared to attend on [July 24, 2006]." *Id.*

After the hearing, the trial court issued findings of fact and conclusions thereon, concluding that "George C. Patrick [an attorney for the Plan Commission] had full inherent, apparent, and actual authority to bind the Plan Commission to the Settlement Agreement." Appellant's Appendix at 22. Accordingly, the trial court ordered the Plan Commission "to approve the primary plat and engineering and issue any necessary permits" and scheduled a hearing on monetary damages, costs of mediation, and attorney fees, which was later continued to January 12, 2007. *Id.* At a meeting on October 24, 2006, the Plan Commission approved the primary plat.

At the hearing on damages, sanctions, and attorney fees on January 12, 2007, the Plan Commission raised its immunity as a governmental entity from sanctions and punitive damages as an affirmative defense. The Plan Commission also presented evidence that the revised plat the Trust Company had submitted pursuant to the settlement agreement did not entirely conform to the terms of the agreement. Trust Company, however, claimed that its revised plat complied with the terms of the settlement agreement and noted further that the Plan Commission had never notified it of any deficiencies in its revised plat or in the performance of its obligations.

After the hearing, the trial court entered the following findings of fact and conclusions thereon:

1. The [Trust Company] and the Plan Commission entered into the written Settlement Agreement dated July 24, 2006 (Petitioners' Exhibit No. 5) (hereinafter "Settlement Agreement") during a court-ordered mediation.

2. The [Trust Company] submitted a revised primary and sketch plan (Respondent's Exhibit A) that encompassed all of the agreements set forth in the Settlement Agreement by August 1, 2006, and thereby fully complied with their obligations un-

der Section 1.g. of the Settlement Agreement.

3. On or about August 1, 2006, employees of the Plan Commission reviewed the revised primary and sketch plan submitted by the [Trust Company] and determined that said plan complied with the Settlement Agreement and the applicable ordinances.

4. Under Section 1.f. of the Settlement Agreement, the Plan Commission withdrew all of its findings against the primary approval of the Deer Ridge South Subdivision in Lake County, Indiana (hereinafter "Subdivision"), and thereby agreed that the Subdivision, as modified by all of the agreements in the Settlement Agreement, fully complied with all applicable ordinances.

5. Section 1. g. of the Settlement Agreement stated that the Plan Commission "shall at its next regular meeting, August 16, 2006, . . . approve this agreement and its engineering."

6. The withdrawal of the findings under Section 1.f. of the Settlement Agreement and the mandatory language of Section 1.g. of the Settlement Agreement used mandatory language requiring the Plan Commission to give primary approval to the Subdivisions and to approve the engineering for the Subdivision by no later than August 16, 2006.

7. As shown in its minutes of the meeting (Petitioners' Exhibit No. 1), the Plan Commission met on August 16, 2006, and voted 7–0 to defer any action on the Subdivision for 30 days.

8. The [Trust Company] filed a Motion to Enforce the Mediation Agreement on August 21, 2006, which was ruled upon favorably by this Court on September 25, 2006.

9. The Court, in its order of September 25, 2006, specifically found that George C. Patrick (attorney for the [Plan Commission]) had ["]full inherent, apparent, and actual authority to bind the Plan Commission to the Settlement Agreement" *See* Order of 9/25/06, p. 4.

10. The Court set the matter for further hearing on damages, sanctions and costs under the Alternative Dispute Resolution Rules of Indiana.

11. At the hearing on damages and sanctions, the Plan Commission for the first time introduced evidence that the Petitioners had not fulfilled their obligations under the mediation agreement—this evidence was not presented at the hearing to enforce the mediation agreement.

12. The [Trust Company] contend[s] that . . .

". . . the Plan Commission and its attorneys violated the Indiana Rules for Alternative Dispute Resolution, intentionally disobeyed the mediation order to this Court, adversely affected the judicial process, misused the mediation process for improper purposes, including the purposes of delaying the approval of the Subdivision, intentionally causing the [Trust Company] to incur additional costs, and ascertaining the settlement concessions that [Trust Company] w[as] willing to make to reach a settlement by false pretenses (i.e., a representation that its attorney had actual authority to bind the Plan Commission), and otherwise engaged in bad faith and conduct that is calculatedly oppressive, obdurate, and obstreperous by their vari-

ous actions, including but not limited to, the following:

a. By providing actual authority to bind the Plan Commission to its attorney prior to the mediation and then, after the Settlement Agreement is signed, attempting to repudiate such authority;

b. participating in the mediation and entering into a written Settlement Agreement with full knowledge that the [Trust Company] w[as] relying upon said authority, and then subsequently repudiating such authority; and

c. representing to the Court that such authority never existed, when in fact actual authority was given by the Plan Commission to its attorney."

13. The Court finds that the Plan Commission did act in bad faith in failing to approve the Subdivision until October 25, 2007 after granting its attorneys full settlement authority.[1]

14. The Plan Commission is immune from the imposition of sanctions for failing to approve the [Trust Company's] revised plat by the deadline set forth in the Settlement Agreement.

15. Sanctions that are recoverable under ADR Rules 2.7 and 2.10, including attorneys' fees and mediation costs, are in the nature of punitive damages and, as such, may not be assessed against governmental entities. Indiana Code § 34–13–3–4; *Department of Natural Resources v. Evans*, 493 N.E.2d 1295 (Ind.Ct.App.1986); *State v. Denny*, 273 Ind. 556, 406 N.E.2d 240 (1980).

16. The Court may order costs to be assessed or awarded against a governmental entity, but not unless the Court determines that such entity "acted with gross negligence or in bad faith in making the decision brought up for review." Indiana Code § 36–7–4–1010(a).

17. This Court finds that the Plan Commission should be liable for the costs of mediation and reimburse the [Trust Company] for [its] mediation costs.

18. The mediation costs incurred by the [Trust Company] are $1,578.55.

19. The oral Motion to Dismiss by the Plan Commission should be denied.

20. Because sanctions and attorney fees are not available, and because the mediation agreement has been entered as a judgment on September 25, 2006, the Court finds that the Plan Commission should be ordered to issue all required building permits to the [Trust Company], except for those which require inspection during the construction process, so that all construction may begin within 10 days of the date of this order.

IT IS THEREFORE ORDERED AND DECREED by the Court that the Plan Commission shall reimburse the [Trust Company] for [its] costs of mediation in the sum of $1,578.55.

*Id.* at 11–15.

 The trial court issued findings of fact and conclusions thereon sua sponte.

---

1. The trial court appears to have entered the wrong date for this meeting, which took place on October 24, 2006.

Sua sponte findings control only as to the issues they cover, and a general judgment will control as to the issues upon which there are no findings. *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind.1997). We will affirm a general judgment entered with findings if it can be sustained on any legal theory supported by the evidence. *Id.* When a court has made special findings of fact, we review sufficiency of the evidence using a two-step process. *Id.* First, we must determine whether the evidence supports the trial court's findings of fact. *Id.* Second, we must determine whether those findings of fact support the trial court's conclusions of law. *Id.* We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. *Freese v. Burns*, 771 N.E.2d 697, 700–701 (Ind.Ct.App.2002), *trans. denied.*

■■■ Findings will only be set aside if they are clearly erroneous. *Yanoff*, 688 N.E.2d at 1262. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Id.* A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id.* In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made. *Id.*

I.

The first issue raised by the Trust Company is whether the trial court erred by concluding that the Plan Commission is immune from the imposition of sanctions under Ind. Alternative Dispute Resolution Rules 2.7 and 2.10.[2] A.D.R. 2.7(E) provides that "[i]n the event of any breach or failure to perform under the [settlement] agreement, upon motion, and after hearing, the court may impose sanctions, including entry of judgment on the agreement." A.D.R. 2.10 provides that "[u]pon motion by either party and hearing, the court may impose sanctions against any attorney, or party representative who fails to comply with these mediation rules, limited to assessment of mediation costs and/or attorney fees relevant to the process." Trust Company argues that, "in exercising its inherent equitable authority, as well as under the ADR rules, a trial court has the ability and may award attorney's fees, as 'sanctions' against a party that repudiates or violates a mediated settlement agreement." Appellant's Brief at 14–15.

We have previously addressed whether a trial court may award sanctions against the State for failing to mediate in good faith as required by the A.D.R. rules. *See State v. Carter*, 658 N.E.2d 618 (Ind.Ct. App.1995). In *Carter*, plaintiff brought a negligence claim against the State after she slipped and fell while holding her daughter in a branch of the Bureau of Motor Vehicles. *Id.* at 620. The trial court ordered the parties to mediate, during which the parties remained approximately $20,000 apart in their offers to settle and failed to reach an agreement. *Id.* Plaintiff then moved for sanctions against the State for failing to "act in good faith in making a reasonable attempt to resolve [the] case," and the trial court granted the motion, awarding costs and attorney fees. *Id.* at 620–621. On interlocutory appeal, we reversed, holding in part that there was no evidentiary basis to

2. Trust Company argues that we review this issue de novo because the trial court's conclusion that governmental entities are immune from sanctions is a conclusion of law. As noted in the standard set forth above, however-

er, when a trial court has issued findings of fact and conclusions thereon, its judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Yanoff*, 688 N.E.2d at 1262.

support the trial court's finding of bad faith against the State. We first noted that "[b]ad faith amounts to more than bad judgment or negligence; '[r]ather it implies the conscious doing of wrong because of dishonest purpose or moral obliquity.... [I]t contemplates a state of mind affirmatively operating with furtive design or ill will.'" *Id.* at 621 (quoting *Oxendine v. Pub. Serv. Co.*, 423 N.E.2d 612, 620 (Ind.Ct.App.1980)). We concluded:

> The State's assessment that Carter's case did not merit a larger settlement offer does not constitute bad faith, and Carter offers no authority for the argument that taking a firm stance during mediation justifies sanctions. Furthermore, Carter offers no explanation as to why her refusal to settle on the State's terms is less culpable than the State's refusal to settle on her terms. Accordingly, the trial court's order imposing sanctions was an abuse of discretion.

*Id.* at 623.

█ We next addressed the State's argument that it was immune from paying costs and fees, an issue that had not previously arisen in the context of the A.D.R. rules. In concluding that the government's immunity from punitive measures extends to provisions of the A.D.R. rules, we noted that:

> As a matter of public policy, the State is not liable for punitive damages for two reasons. First, the State does not have

a mind that can be deterred by an award of punitive damages. *State v. Denny* (1980), 273 Ind. 556, 406 N.E.2d 240. Secondly, it is the citizen taxpayers who would bear the burden of this punitive award if assessed against the State. [*State v. Hicks*, 465 N.E.2d 1146 (Ind.Ct. App.1984).] We recognize that the case before us does not involve an award of attorney fees under the bad faith exception, but the reasoning and public policy precluding punitive damages are relevant to our analysis.

*Id.* at 624. We also considered other manifestations of the State's immunity, including the provision against punitive damages in the Indiana Tort Claims Act, case law mandating that the State is not liable for costs to a prevailing plaintiff pursuant to Ind. Trial Rule 54(D), and the State's immunity in federal courts under the Eleventh Amendment. *Id.* In light of the general policy of governmental immunity, and because there was "no authority for assessing ... costs and fees against the State [in this case]," we held that "even if there had been sufficient evidence to conclude that the State mediated in bad faith, the award against the State was improper and should be reversed."[3] *Id.*

█ Citing *Carter*, the Plan Commission claims that it is immune from sanctions triggered by the A.D.R. rules. Trust Company, however, relies on *Noble Coun-*

---

3. Trust Company argues that "[s]ince the Court previously determined that there was no showing that the State of Indiana mediated in bad faith, this statement [that the State was immune from sanctions] at the end of the *Carter* decision is dicta and should not be interpreted as precedent with respect to the imposition of sanctions under the ADR Rules." Appellant's Brief at 16. Statements that are not necessary in the determination of the issues presented on appeal are dicta, are not binding, and do not become the law of the case. *Hanson v. Valma M. Hanson Revocable*

*Trust*, 855 N.E.2d 655, 662 (Ind.Ct.App.2006). Here, two issues were before the court in *Carter*: whether the State had acted in bad faith, and whether the State was immune from sanctions. Although the outcome of the case, namely, a reversal, could have been reached by the resolution of either issue, nonetheless, the court's reasoning in determining whether the State was immune from sanctions constitutes statements necessary in the determination of an issue presented on appeal and therefore cannot be dicta.

*ty v. Rogers,* 745 N.E.2d 194 (Ind.2001), for the proposition that governmental entities are no longer immune from the judicial power to sanction litigants. In *Noble County,* a building inspector issued a stop work order on plaintiff's renovation project on the grounds that plaintiff had failed to obtain a building permit. 745 N.E.2d at 195. Plaintiff continued working until the county obtained a temporary restraining order. *Id.* This court held that the pertinent county ordinances amounted to a "building code" and not a "housing code" and dissolved the temporary restraining order because such "building codes" do not apply to "private homes that are built by individuals and used for their own occupancy." *Id.* at 195–196 (citing *Rogers v. Noble County By and Through the Noble County Bd. of Comm'rs,* 679 N.E.2d 158 (Ind.Ct.App.1997), *trans. denied.*).

On remand, plaintiff asserted that she was entitled to costs and damages under Ind. Trial Rule 65(C), which provides:

> No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. *No such security shall be required of a governmental organization, but such governmental organization shall be responsible for costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.*

*Id.* at 196 (emphasis added). Plaintiff sought compensation for the cost of finding another place to live while the restraining order was in place and for damage to the house caused by exposure to the elements. *Id.* Noble County moved for summary judgment, arguing that the Indiana Tort Claims Act precluded her recovery. *Id.* The trial court denied summary judgment but certified its order for interlocutory appeal. *Id.* This court held that Trial Rule 65 is procedural in nature and therefore trumped the conflicting provisions of the Tort Claims Act. *Id.*

On transfer, the Indiana Supreme Court faced a conflict between its trial rules and the State's immunity from sanctions:

> The parties ask us to resolve this apparent conflict by applying either the Trial Rule or the [Tort Claims Act] to the exclusion of the other. This posture puts into tension the powers of coordinate branches of our state government by asking us to ignore the pronouncement of one such branch.

*Id.* at 196–197. The court resolved the conflict first by holding that, for purposes of Trial Rule 65(C), the conduct of State employees is "wrongful only to the extent that they have acted with such bad faith and malice that their actions undermine the authority of the court issuing the restraining order or injunction." *Id.* at 197. The court reasoned:

> The Legislature's ability to immunize government actions knows few limits, but those limits are reached when immunity impinges upon the judiciary's constitutional sphere. That is, while the Legislature may shield the State from substantive tort liabilities, *it may not immunize the State from our power to sanction the attorneys and parties appearing before us* .... This power to sanction is a necessary precondition to the exercise of our independent judicial power:
>
> > To deny a court the power to enforce obedience to its lawful orders against parties who have been subjected properly to its jurisdiction in the first instance, is to nullify its effectiveness as an independent branch of our govern-

ment. The power of a court to enforce compliance with its orders and decrees duly entered is inherent. No statutory sanction is needed. In both equity and law a court would be powerless to give effective relief were its arms tied by such requirements as relator asserts are necessary.

*State ex rel. Brubaker v. Pritchard,* 236 Ind. 222, 226–27, 138 N.E.2d 233, 235 (1956).

\* \* \* \* \* \*

*It is beyond question that this power extends to governmental attorneys and parties.* "When the State enters the court as a litigant, it places itself on the same basis as any other litigant; subjecting itself to the inherent authority of the court to control actions before it, just as any other litigant." *State v. Blenden,* 748 So.2d 77, 88–89 (Miss. 1999), *reh'g denied.*

*Id.* at 197–199 (emphasis added).

Accordingly, the court balanced its power to sanction litigants with the State's immunity by holding that the State must pay costs and damages to a party enjoined "in bad faith or with malice," a compromise under which governmental entities could continue to perform their functions without fear of reprisal should they make a mistake in good faith. *Id.* at 199. Because there was no evidence that the plaintiff was restrained in bad faith, she had not been wrongfully restrained for purposes of Trial Rule 65(C). *Id.* at 200.

In reconciling the two cases, we first note that the court in *Noble County* did not expressly overrule *Carter;* rather, it distinguished *Carter* without disapproving of it. *See id.* at 199 n. 6. Furthermore, since deciding *Noble County,* the Indiana Supreme Court has cited *Carter* with approval for the proposition that Indiana courts have "been reluctant to impose pu-

nitive damages on government entities in part because the penalty falls ultimately on innocent taxpayers." *Brownsburg Cmty. Sch. Corp. v. Natare Corp.,* 824 N.E.2d 336, 345–46 (Ind.2005) (citing *Carter,* 658 N.E.2d at 624), *reh'g denied.* Finally, *Noble County* and *Carter* are distinguishable because the trial rule before the court in *Noble County* expressly provided that the government shall be responsible for costs and damages if it wrongfully enjoins or restricts a party, but the A.D.R. rules in *Carter* contain no specific provision for the government to pay sanctions. Accordingly, we hold that, under *Noble County,* specific provisions in court rules for sanctions against a governmental entity may be enforced, but, where there is no such provision, *Carter* is controlling and governmental entities are immune from sanctions. We therefore affirm the trial court's conclusion that the Plan Commission is immune from the imposition of sanctions under the A.D.R. rules. *See Carter,* 658 N.E.2d at 623 (holding that the State is immune from punitive awards).

### II.

■ The next issue is whether Trust Company may recover attorney fees under Ind.Code § 36–7–4–1010(a), which provides that "[c]osts may not be allowed against the board of zoning appeals unless it appears to the court that the board acted with gross negligence or in bad faith in making the decision brought up for review." Trust Company argues that, although Ind.Code § 36–7–4–1010(a) applies on its face only in cases against the board of zoning appeals, Ind.Code § 36–7–4–1016 provides for certiorari review of decisions of plan commissions, thereby making plan commissions subject to Ind.Code § 36–7–4–1010(a) as well. The Plan Commission concedes that, if it acted in bad faith, the trial court "correctly awarded the costs of

mediation" but argues that the term "costs" does not include attorney fees. Cross Appellant/Appellee's Brief at 44.

We recently decided this same issue. *See City of Charleston Advisory Planning Comm'n v. KBJ, LLC*, 879 N.E.2d 599, 604 (Ind.Ct.App.2008). In *City of Charleston*, the trial court awarded costs and attorney fees against the planning commission pursuant to Ind.Code § 36–7–4–1010 for its failure in bad faith to approve KBJ's plat. *Id.* at 601. We reasoned:

> Even assuming KBJ is correct in its assertion that Indiana Code Section 36–7–4–1010 applies to plan commissions in addition to boards of zoning appeals, this Section only applies to "costs" and does not mention "attorney fees." Indiana follows the general rule that each party must pay his or her own attorney fees. *Masonic Temple Ass'n of Crawfordsville v. Indiana Farmers Mut. Ins. Co.*, 837 N.E.2d 1032, 1037 (Ind.Ct.App.2005). "Therefore, attorney fees are not allowable in the absence of a statute, agreement, or rule to the contrary." *Id.* at 1037–38. Further, "It has long been established in this State, however, that the bare term 'costs' does not encompass attorney fees." *State v. Holder*, 260 Ind. 336, 339, 295 N.E.2d 799, 800 (1973).

Because Indiana Code Section 36–7–4–1010 does not contain a provision regarding the payment of attorney fees, it cannot be read to authorize such. Regardless of whether the Planning Commission acted in bad faith, as the trial court specifically found, Indiana Code Section 36–7–4–1010 does not authorize the recovery of attorney fees.

*Id.* at 604. For the same reasons, we hold that Ind.Code § 36–7–4–1010(a) does not authorize an award of attorney fees against the Plan Commission.[4]

## III.

■ The final issue, raised on cross appeal, is whether the trial court erred when it concluded that the Plan Commission acted in bad faith. "Bad faith amounts to more than bad judgment or negligence; '[r]ather it implies the conscious doing of wrong because of dishonest purpose or moral obliquity.... [I]t contemplates a state of mind affirmatively operating with furtive design or ill will.'" *Carter*, 658 N.E.2d at 621 (quoting *Oxendine v. Public Service Co.*, 423 N.E.2d 612, 620 (Ind.Ct.App.1980)). Because a bad faith determination inherently includes an element of culpability, a finding of bad faith should require more than the unsubstantiated allegations of an adverse party. *Id.* at 621–622.

The trial court concluded that "the Plan Commission did act in bad faith in failing to approve the Subdivision until October 25, 2007 after granting its attorneys full settlement authority." Appellant's Appendix at 14. The Plan Commission argues that its attorneys could not have had full settlement authority because Indiana's Open Door Law requires that any provisional settlement agreement be approved at a public meeting. Next, the Plan Commission argues that its attorneys informed Trust Company that they had only provisional settlement authority and that any

---

**4.** Trust Company also cites Ind.Code § 34–52–1–1(b) in support of its argument that it is entitled to attorney fees under Ind.Code § 36–7–4–1010. Ind.Code § 34–52–1–1(b) provides in part that, "[i]n any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party ... litigated the action in bad faith." This provision does not affect our reasoning concerning Ind.Code § 36–7–4–1010, which authorizes only an award of costs, and not of attorney fees, against the board of zoning appeals.

final agreement would be subject to approval in a public meeting. Finally, the Plan Commission argues that, even if its attorneys had full settlement authority, its actions in not approving the agreement at the meeting in August do not meet the definition of bad faith. Because we agree that Indiana's Open Door Law requires a settlement agreement to be approved at a public meeting, we need not address the Plan Commission's other contentions.[5]

■ The purpose of Indiana's Open Door Law is to ensure that the "official action of public agencies" is conducted openly so that the general public may be fully informed. *City of Gary v. McCrady*, 851 N.E.2d 359, 365 (Ind.Ct.App.2006) (citing *Gary/Chicago Airport Bd. of Authority v. Maclin*, 772 N.E.2d 463, 468 (Ind.Ct.App.2002)); Ind.Code § 5–14–1.5–1. The provisions of this statute are to be liberally construed in order to give effect to the legislature's intention. *City of Gary*, 851

N.E.2d at 365 (citing Ind.Code § 5–14–1.5–1).

■ Under the Open Door Law, the Plan Commission is the governing body of a public agency. *See* Ind.Code §§ 5–14–1.5–2(a)–(b). "Official action" that must be conducted at an open meeting includes "mak[ing] decisions" and "tak[ing] final action." Ind.Code § 5–14–1.5–2(d)(5)–(6). A final action is "a vote by the governing body on any motion, proposal, resolution, rule, regulation, ordinance, or order." Ind.Code § 5–14–1.5–2(g). Moreover, Ind. Code § 36–7–4–302 provides that action of an advisory plan commission "is not official, unless it is authorized, at a regular or special meeting, by a majority of the entire membership of the plan commission." Accordingly, we agree with the Plan Commission that, under the Open Door Law, the "agreement reached at mediation could at most be a provisional agreement subject to review and approval of the Plan Commis-

5. Trust Company argues that "[i]n not timely appealing the Judgment of 9/25/06 [granting the motion to enforce settlement agreement], the Plan Commission waived the first and second [arguments] set forth in its cross appeal that are directed to whether the Plan Commission attorney had authority to bind the Plan Commission to the Settlement Agreement." Appellant's Reply/Cross Appellee's Brief at 12. Therefore, the Plan Commission "should not be permitted to collaterally attack the findings and conclusions of the Judgment of 9/25/06 that the Settlement Agreement was valid and enforceable." *Id.* at 9. Whether the trial court's order was a final judgment governs the appellate courts' subject matter jurisdiction. *Georgos v. Jackson,* 790 N.E.2d 448, 451 (Ind.2003). A final judgment "disposes of all issues as to all parties thereby ending the particular case." *Id.* (citing *Doperalski v. City of Michigan City,* 619 N.E.2d 584, 585 (Ind. Ct.App.1993)). It leaves nothing for future determination. *Id.* (citing *Thompson v. Thompson,* 259 Ind. 266, 269, 286 N.E.2d 657, 659 (1972)). This doctrine is now formalized in Indiana Rule of Appellate Procedure 2(H), which provides that a judgment is final if "it disposes of all claims as to all parties...." *Id.*

Here, Trust Company's Motion to Enforce Settlement Agreement requested the court to order the Plan Commission to approve the primary plat, which the court did, and also requested costs and attorney fees, for which the court scheduled a hearing at a later date. Thus, the judgment of September 25, 2006, did not dispose of all claims as to the parties and was not a final judgment. *See id.* ("The trial court's grant of the Motion to Enforce was not a final judgment because it did not end the case."). Furthermore, an order to enforce a settlement agreement is arguably appealable as of right under Ind. Appellate Rule 14(A)(2) because it required the execution of a document. *Id.* at 452. However, there is no requirement that an interlocutory appeal be taken, and a party can elect to wait until the end of litigation to raise the issue on appeal from final judgment. *Id.* (citing *In re Newman,* 174 Ind.App. 537, 545–546, 369 N.E.2d 427, 432 (1977)). Accordingly, the Plan Commission has not waived its cross appeal issues concerning the trial court's order of September 25, 2006.

sion at an open meeting." Cross Appellant's/Appellee's Brief at 20.

There appears to have been significant confusion among the parties as to the requirements of the Open Door Law in the context of mediation. The better practice is to include language in a settlement agreement that the agreement is contingent upon compliance with the Open Door Law and that it must be approved at an open meeting. Although the agreement in this case did not include such language, there is no evidence on the part of the Plan Commission of a "conscious doing of wrong because of dishonest purpose or moral obliquity" or "a state of mind affirmatively operating with furtive design or ill will." *Carter,* 658 N.E.2d at 621. We therefore reverse the trial court's conclusion that the Plan Commission acted in bad faith in failing to approve the plat until October 25, 2007. *See, e.g., id.* at 622 (reversing the trial court's conclusion that the State acted in bad faith).

For the foregoing reasons, we affirm the trial court's conclusion that the Plan Commission is immune from the imposition of sanctions and reverse its conclusion that the Plan Commission acted in bad faith.

Affirmed in part and reversed in part.

BARNES, J. and VAIDIK, J., concur.