ATTORNEYS FOR APPELLANT
Stephen M. Maish
Patrick A. Mysliwy
Maish & Mysliwy
Hammond, Indiana

ATTORNEYS FOR APPELLEE
Anthony W. Overholt
Maggie L. Smith
Frost Brown Todd LLC
Indianapolis, Indiana

# In the
# Indiana Supreme Court

**FILED**

Apr 28 2009, 1:33 pm

*[signature]*

**CLERK**
of the supreme court,
court of appeals and
tax court

No. 37S03-0904-CV-192

LAKE COUNTY TRUST COMPANY, Trustee under Trust Agreement dated
      November 1, 2002 and known as the DSK Family Trust No. 5400;
LAKE COUNTY TRUST COMPANY, Trustee Under Trust Agreement dated
      December 18, 2002 and known as Trust No. 5390;
LAKE COUNTY TRUST COMPANY, Trustee under Trust Agreement dated
      February 18, 2003 and known as P & M LAND TRUST NO. 5444;
THOMAS N. SIMSTAD;
MARLA K. SIMSTAD; AND
KENNETH BACHORSKI,                                      *Petitioners/Appellants,*

v.

ADVISORY PLAN COMMISSION OF LAKE COUNTY,           *Respondent/Appellee.*

Interlocutory Appeal from the Jasper Circuit Court, No. 37C01-0603-PL-074
The Honorable John D. Potter, Judge

On Transfer from the Indiana Court of Appeals, No. 37A03-0705-CV-230

**April 28, 2009**

**Dickson, Justice.**

This appeal challenges the trial court's use of sanctions in the course of its enforcement of a mediated settlement in a dispute arising from the denial of an application for subdivision plat approval. We hold that government entities are subject to sanctions under the Indiana Alternative Dispute Resolution Rules, but that in this case the Advisory Plan Commission did not act in

bad faith for failing to approve the mediation agreement because it remained subject to the Advisory Plan Commission's final approval at a public meeting.

After the respondent Advisory Plan Commission of Lake County, Indiana ("Plan Commission") denied a request for primary plat approval for the Deer Ridge South Subdivision located in unincorporated Lake County, the appellants (hereinafter "Developers") sought judicial review of the decision. The trial court ordered mediation, which resulted in a written settlement agreement that purported to approve a "revised primary and sketch plan" attached to the agreement, and also included the following provision:

> That the Petitioner shall submit a clean revised primary and sketch plan encompassing all of the agreements set forth herein and the Advisory Plan Commission of Lake County shall at its next regular meeting, August 16, 2006, or a special meeting to be called sooner and before August 4, 2006, shall approve this agreement and its engineering.

Appellant's App'x at A66. The Plan Commission then met as scheduled but voted to defer a decision on the subdivision for thirty days. The Developers filed a motion to enforce the agreement, and the Plan Commission then voted to reject it, after which the trial court on September 25, 2006, ordered that the settlement agreement be enforced and specifically ordered the Plan Commission to approve the plat and to issue any necessary permits. The Plan Commission then complied and approved the primary plat and engineering. After a hearing, the trial court on April 18, 2007, found that the Plan Commission had acted in bad faith in failing to approve the subdivision after having granted its attorneys full settlement authority. The trial court held that governmental entities were not subject to sanctions under the Indiana Alternative Dispute Resolution Rules, but that, pursuant to statutory authority, the Plan Commission must reimburse the Developers their costs of mediation, $1,578.55. The Developers and the Plan Commission each filed a notice of appeal,[1] and the trial court stayed further proceedings.

The Developers' appeal primarily contends that the Plan Commission is not immune from sanctions under Indiana Alternative Dispute Resolution Rules 2.7 and 2.10. The Plan Commis-

---

[1] In their separate notices of appeal, Appellant's App'x at A43-A44, A46-A47, the Developers and the Plan Commission each sought an appeal from the trial court's interlocutory order of April 18, 2007, pursuant to Indiana Appellate Rule 14(A)(1), which authorizes appeals from specified types of interlocutory orders as a matter of right, without requiring certification from the trial court or acceptance by the Court of Appeals.

sion's cross-appeal primarily urges that because its attorneys in the mediation process could not bind the Plan Commission to a settlement in violation of Indiana's Open Door Laws, the trial court incorrectly found it to have acted in bad faith for failing to promptly approve the mediation settlement. The Court of Appeals consolidated the appeals and ultimately held that the Plan Commission is immune from any sanctions under the A.D.R. Rules and that the Plan Commission did not act in bad faith in failing to promptly approve the plat. Lake County Trust Co. v. Advisory Plan Comm'n of Lake County, 883 N.E.2d 124 (Ind. Ct. App. 2008). We grant transfer.

### 1. Application of A.D.R. Sanctions to Governmental Entities

The Developers challenge the trial court's conclusion that the Plan Commission, as a governmental entity, is immune from the imposition of sanctions under Alternative Dispute Resolution Rules 2.7(E)(3) and 2.10, which apply to mediation and which state, in relevant part:

> In the event of any breach or failure to perform under the agreement, upon motion, and after hearing, the court may impose sanctions, including entry of judgment on the agreement.

A.D.R. 2.7(E)(3).

> Upon motion by either party and hearing, the court may impose sanctions against any attorney, or party representative who fails to comply with these mediation rules, limited to assessment of mediation costs and/or attorney fees relevant to the process.

A.D.R. 2.10. Our A.D.R. Rules do not contain any provisions expressly granting immunity from sanctions to governmental entities participating in mediation.

Supporting the trial court's decision on this issue, the Plan Commission urges that governmental entities should not be subject to costs or attorney fees under the A.D.R. Rules, even if the governmental entity mediates in bad faith, emphasizing State v. Carter, 658 N.E.2d 618 (Ind. Ct. App. 1995), *trans. not sought*, and arguing that the A.D.R. Rules do not expressly permit costs or attorney fees to be assessed against a governmental entity.

Carter involved an interlocutory appeal in a negligence action arising from injuries at a branch of the Indiana Bureau of Motor Vehicles. Following an unsuccessful court-ordered med-

3

iation, the plaintiff sought, and the trial court granted, sanctions against the State for failing to act in good faith by making a reasonable attempt to resolve the case. The Court of Appeals reversed, finding no evidence of bad faith, *id.* at 622-23, and, in addition, opined that, even if there had been bad faith, the "the trial court should not have sanctioned the State because it is immune from punitive awards," *id.* at 623.

The Developers argue that this latter conclusion in Carter was impliedly overruled by this Court in Noble County v. Rogers, 745 N.E.2d 194 (Ind. 2001). There, Rogers sought damages under Indiana Trial Rule 65(C) after being "wrongfully enjoined or restrained" by Noble County government from adding a second story to her home. *Id.* at 196. This Court found that the proper construction of the word "wrongfully" involved the interaction between the governmental immunity provisions of the Indiana Tort Claims Act and "our inherent power to sanction litigants for improper or untoward behavior in judicial proceedings." *Id.* at 197. And we balanced the statutory limitations and the "judiciary's inherent power to sanction" to conclude that "a restraining order or an injunction obtained by the government is wrongful only when the government acts in bad faith or with malice so as to threaten the proper functioning of the court." *Id.* at 199. Applying this distinction, we found no bad faith by Noble County presented in the record. Significantly, however, we emphasized that the "power to sanction is a necessary precondition to the exercise of our independent judicial power," and that "[t]o protect the proper functioning of judicial proceedings, we also have imbedded [the sanctioning] power in numerous court rules." *Id.* at 198.

In Brownsburg Community School Corporation v. Natare Corporation, 824 N.E.2d 336 (Ind. 2005), which did not involve the A.D.R. Rules, we held that a governmental entity cannot be held liable for treble damages because they are punitive in nature, and we referenced Carter only as an example of the reluctance of courts to impose punitive damages on government entities. *Id.* at 345-46. And in Noble County, we similarly acknowledged that Carter had "refused to award attorneys fees and costs against the government on the grounds that it is immune from 'punitive' awards." Noble County, 745 N.E.2d at 199 n.6. But this example was presented as an incidental contrast to our recognition that inherent judicial power includes the authority to impose sanctions on governmental entities:

It is beyond question that this power extends to governmental attorneys and parties. "When the State enters the court as a litigant, it places itself on the same basis as any other litigant; subjecting itself to the inherent authority of the court to control actions before it, just as any other litigant." State v. Blenden, 748 So.2d 77, 88-89 (Miss. 1999), *reh'g denied.*

*Id.* at 199.

Mediation proceedings pursuant to our A.D.R. Rules are deemed to be "in court," and "in a court sanctioned environment," irrespective of whether they actually occur inside a courtroom. Koval v. Simon Telelect, Inc., 693 N.E.2d 1299, 1307 (Ind. 1998). And, as we observed in Fuchs v. Martin, "[a]n order to mediate is not unlike the requirements imposed by our rules governing discovery and other pre-trial procedure." 845 N.E.2d 1028, 1041 (Ind. 2006). Indiana Trial Rule 37(B)(2) specifically permits discovery sanctions to be imposed upon a governmental organization. Even without explicitly relying upon such authorization, we have recognized that a trial court, in the exercise of its inherent power, has wide discretion to impose sanctions to remedy a discovery violation by the State in criminal cases. Carson v. State, 271 Ind. 203, 206, 391 N.E.2d 600, 602 (1979); Reid v. State, 267 Ind. 555, 565, 372 N.E.2d 1149, 1154-55 (1978). The A.D.R. Rules do not exempt governmental entities. They apply in all civil and domestic relations litigation in Indiana courts. A.D.R. 1.4. Furthermore, A.D.R. 2.7(E)(3) authorizes the imposition of sanctions for "any" breach or failure to perform under an agreement resulting from mediation, and A.D.R. 2.10 authorizes sanctions against "any" attorney or party representative who fails to comply with the mediation rules. No exception is granted to governmental entities or their attorneys.

Until now, this Court has not had occasion to review the proposition espoused in Carter that a trial court may not impose A.D.R. Rule sanctions against a governmental entity. In contrast to the punitive damage rationale employed in Carter, we find that the sanctions authorized by the A.D.R. Rules are more analogous to the exercise of inherent judicial authority than to the imposition of punitive damage awards in civil law suits. Like other parties to litigation who may be involved in a mediation proceeding, governmental entities are equally obligated to comply with the applicable rules and thus should be equally subject to the sanctions authorized to encourage compliance. We therefore disapprove of the portion of Carter that expresses a contrary

view, and we now hold that governmental entities are not immune from the power of courts to impose sanctions under the A.D.R. Rules, particularly Rules 2.7(E)(3) and 2.10.

## 2. Mediation Agreement Subject to Open Door Laws

Upon finding that the Plan Commission acted "in bad faith in failing to approve the Subdivision until October 25, 2007 after granting its attorneys full settlement authority," the trial court concluded that the Plan Commission should reimburse the Developers $1,578.55 for their mediation costs. Appellant's App'x at A14-A15. On cross-appeal, the Plan Commission challenges this conclusion and the finding of bad faith, arguing that its attorneys in the mediation could not, as a matter of law, bind the Commission to a settlement in violation of Indiana's Open Door Laws and that the agreement reached in mediation "could only be a provisional agreement subject to a condition precedent and, therefore, was unenforceable until that condition precedent was satisfied." Br. of Cross-Appellant/Appellee at 15.

The Developers assert that the settlement agreement was final and not required by the Open Door Law to be subsequently approved in a public meeting and thus that the Plan Commission's failure to comply with the agreement supported the trial court's finding of bad faith.[2] The

---

[2] The Developers also present procedural challenges to the Plan Commission's cross appeal. The Developers argue that the Plan Commission failed to timely challenge the September 25, 2006 trial court ruling in accordance with the thirty-day requirement for interlocutory appeals pursuant to Indiana Appellate Rule 14 and that, by ultimately approving the subdivision plat on October 24, 2006, the Plan Commission has waived its right to challenge any alleged error in the trial court's order of September 25, 2006. We reject both claims. The Plan Commission was not required to institute an interlocutory appeal of the September 2006 ruling but instead was entitled to challenge it as part of its appeal from the court's final judgment. Bojrab v. Bojrab, 810 N.E.2d 1008, 1014 (Ind. 2004); Georgos v. Jackson, 790 N.E.2d 448, 452 (Ind. 2003). While the Developers' notice of appeal indicated that they were challenging the trial court's entry of April 18, 2007 as an interlocutory order, the Developers subsequently clarified that they were appealing the April 18, 2007 order as a final appealable order. Plan Commission's Reply in Support of its Motion for Appellate Rule 19 Preappeal Conference at 2, 4. As to the claim of waiver, the Plan Commission's cross-appeal is challenging only the trial court's findings related to its determination that the Plan Commission acted in bad faith, justifying imposition of sanctions. But the Plan Commission's cross appeal is not challenging the trial court's mandate requiring approval of the subdivision. Reply Br. of Cross-Appellant at 5-6. By voting to approve the subdivision plat, the Plan Commission did not waive its right to challenge on appeal the trial court's imposition of sanctions and the prerequisite factual findings regarding bad faith supporting the sanctions.

Developers argue that the discussions and resulting settlement agreement during the mediation do not constitute a "meeting" of the Plan Commission that must be open to the public under the Open Door Law because of the absence of a "majority of the governing body of a public agency," citing Indiana Code § 5-14-1.5-2(c). According to the Developers, the Open Door Law was satisfied by the Plan Commission's pre-mediation public meeting in July 2006 which authorized its attorney and representative to participate in the mediation with full settlement authority. The Plan Commission responds by arguing that a plan commission's issuance of a subdivision primary plat approval is non-delegable because of the absence of specific statutory delegation authorization, and that evidence was presented that demonstrated that the Commission did not delegate its approval authority to its representatives in this mediation.

The Indiana Open Door Law, Ind. Code §§ 5-14-1.5-1 to -8, seeks to assure that government business "be conducted openly so that the general public may be fully informed." Dillman v. Trs. of Ind. Univ., 848 N.E.2d 348, 351 (Ind. Ct. App. 2006), *trans. denied*. Administrative actions taken by delegated representatives of governing bodies, however, are not subject to the Open Door Law. *Id.* at 353. An advisory plan commission is authorized by statute to delegate authority to perform ministerial acts in all cases "except where final action of the commission is necessary." Ind. Code § 36-7-4-402(a). As to plats involving land covered by a subdivision control ordinance, the exclusive control over the approval of plats is assigned by statute to plan commissions. *Id.* § 36-7-4-701. And a plan commission's act is deemed "not official, unless it is authorized, at a regular or special meeting, by a majority of the entire membership of the plan commission." *Id.* § 36-7-4-302(a). We conclude that this statutory scheme operates to preclude the delegation of plan commission authority for final approval of subdivision plats, but instead requires final approval by a majority of the commission members at meetings subject to the Open Door Law. Because the settlement agreement resulting from the mediation was thus not final until its approval by a majority of the Plan Commission at a public meeting, the Commission's failure to promptly approve the subdivision did not constitute bad faith conduct warranting sanctions.

While we generally favor the amicable settlement of disputes and encourage the use of mediation to facilitate such agreements, these processes cannot substitute for legislatively man-

7

dated official and public assent to the resulting settlement agreements. Resort to mediation can be extremely beneficial to all parties, but, as observed by the Court of Appeals, it is wise practice "to include language in a settlement agreement that the agreement is contingent upon compliance with the Open Door Law and that it must be approved at an open meeting." Lake County Trust Co., 883 N.E.2d at 136.

Because we conclude that the Plan Commission did not act in bad faith, we do not address the parties' dispute regarding whether Indiana Code § 36-7-4-1010(a) provides a basis to recover attorney fees in this case.

## Conclusion

The trial court's order that the Plan Commission shall reimburse the Developers for their costs of mediation in the sum of $1,578.55 is vacated.

Shepard, C.J., and Sullivan, Boehm, and Rucker, JJ., concur.