Michael GEORGOS and Pangere
Corporation, Appellants
(Defendants Below),

v.

Claude JACKSON, Appellee
(Plaintiff Below).

No. 45S03–0207–CV–401.

Supreme Court of Indiana.

June 26, 2003.

Daniel G. Suber, Valparaiso, IN, Attorney for Appellants.

Jerry T. Jarrett, Gary, IN, Attorney for Appellee.

**ON PETITION FOR TRANSFER**

BOEHM, Justice.

We hold that an order directing the parties to consummate a mediation settlement agreement, without more, is not a final judgment, and that an attorney attending a mediation settlement conference may bind the client to a settlement agreement despite the client's absence.

### Factual and Procedural Background

Claude Jackson was injured in a collision with a truck driven by Michael Georgos, an employee of Pangere Corporation, and sued both Georgos and Pangere (collec-

tively "Defendants").[1] The trial court ordered mediation. Although the order does not appear in the record, it is clear that the mediation was to be conducted under the Indiana Alternative Dispute Resolution Rules. Rule 2.7(B)(2) provides:

> All parties, attorneys with settlement authority, representatives with settlement authority, and other necessary individuals shall be present at each mediation conference to facilitate settlement of a dispute unless excused by the court.

Jackson did not appear at the mediation. No party contends that his attendance was excused by the trial court. His attorney and an attorney representing both Defendants were present. Jackson's attorney stated at the mediation that he had the authority to settle, and Jackson has never disputed that this authority existed as of that time. The mediation resulted in a document signed by both attorneys and the mediator. It reads in its entirety:

## CONFIDENTIAL

## MEDIATION SETTLEMENT AGREEMENT

Come now the parties, by counsel, for mediation on November 2, 1998. Mediation of the claims resulted in the following settlement:

1. Defendants' insurer will pay the plaintiff $94,500.00 in exchange for a full release.

2. Plaintiff agrees to be responsible for all liens.

3. Costs of mediation will be shared equally by the parties.

/s/ Frederick J. Ball

Attorney for [Defendants]

/s/ Robert L. Lewis

Attorney for [Jackson]

/s/ Daniel W. Glavin, Mediator

Date: November 2, 1998

The mediator reported to the court that the case had been settled. At the time of the mediation Jackson had already incurred medical expenses of approximately $85,000.00. At some point after the mediation Jackson advised the Defendants that he had repudiated the settlement. The Defendants then filed a "Motion to Enforce Mediation Settlement Agreement." Jackson responded that at the time of the mediation both he and his attorney had believed that the limit on the policy covering the Defendants was $100,000 but they had subsequently learned that the limit was $1 million. Based on this factual predicate, Jackson asserted a variety of legal theories (fraud, mistake, etc.) he contended warranted voiding the settlement agreement.

On August 2, 1999, the trial court granted the Motion to Enforce, but did not dismiss the complaint. Apparently treating the grant of the motion as a final judgment, almost five months later, on December 31, 1999, Jackson filed a Trial Rule 60(B)(8) "Motion for Relief from Judgment," asserting that because ADR Rule 2.7(B)(2) required the parties as well as the attorneys to be present at a mediation, any agreement reached in the absence of the parties was a nullity. The trial court agreed with Jackson and on February 22, 2000, granted Jackson's motion for relief from judgment. The case went to trial and on April 9, 2001, the jury returned a verdict for Jackson in the amount of $462,000. The Defendants appealed, as-

---

**1.** This suit was originally filed by Luther Stewart, a passenger in Jackson's car. Stewart filed a complaint against Georgos, Pangere, and Jackson, and Jackson cross-claimed against Georgos and Pangere. Stewart then settled his claim, and is not a party to this appeal. The cross-claim by Jackson against Georgos and Pangere remains.

serting among other things that the trial court lacked jurisdiction to grant the "Motion for Relief from Judgment" because it was filed too late to be granted as a motion to correct errors or for reconsideration of a final judgment, and, if viewed as a Trial Rule 60 motion, stated no ground for relief under that rule.[2]

The Court of Appeals reversed. The Court of Appeals first held that the August 2 order enforcing the settlement agreement was a final judgment. Accordingly, the Court of Appeals reasoned that the trial court lost jurisdiction over the case after thirty days when the time for appeal or a motion to correct errors lapsed on September 1, 1999. The Court of Appeals also held that Jackson's Trial Rule 60 motion was improperly granted because it raised no facts not known at the time of the August 2 order. As a result, the dispute was resolved by the August 2 order, and the Court of Appeals ruling reinstated the order granting the Motion to Enforce. This Court granted transfer on July 19, 2002. For the reasons given below, we reach the same result as the Court of Appeals, but for different reasons.

### I. Appealability of Order Enforcing Settlement Agreement

The Court of Appeals concluded that the grant of the Defendant's Motion to Enforce Mediation Settlement Agreement was appealable as a final judgment and also under Trial Rule 54(B). For the reasons given below, we conclude it was neither.

■ Succinctly stated, a final judgment "disposes of all issues as to all parties thereby ending the particular case." *Doperalski v. City of Michigan City,* 619 N.E.2d 584, 585 (Ind.Ct.App.1993). It leaves nothing for future determination.

*Thompson v. Thompson,* 259 Ind. 266, 269, 286 N.E.2d 657, 659 (1972). This doctrine is now formalized in Indiana Rule of Appellate Procedure 2(H), which provides that a judgment is final if, "(1) it disposes of all claims as to all parties . . . ." Ind. Appellate Rule 2(H). The order did not call itself a judgment, and did not enter judgment for $94,500. Rather, it merely ruled on a motion and directed the parties to "take all measures to consummate the settlement . . . within (30) thirty days . . . ."

■ Both the parties and the trial court treated Jackson's motion for relief from judgment as properly filed under Trial Rule 60(B)(8). The Court of Appeals concluded that because the parties and the trial court treated the trial court's August 2 order as a final judgment, whatever defects existed in the ruling as a final judgment were cured. We do not agree that the views of the parties or the trial court resolve this issue. Whether the order was a final judgment governs the appellate courts' subject matter jurisdiction, and unlike most contentions, lack of jurisdiction is not waived by the parties. Neither the parties nor the trial court can confer appellate jurisdiction over an order that is not appealable either as a final judgment or under Trial Rule 54(B). To the contrary, the lack of appellate jurisdiction can be raised at any time, and if the parties do not question subject matter jurisdiction, the appellate court may consider the issue sua sponte. *Albright v. Pyle,* 637 N.E.2d 1360, 1363 (Ind.Ct.App.1994).

■ The trial court's grant of the Motion to Enforce was not a final judgment because it did not end the case. The relief requested by the Defendants was that the trial court uphold the validity of the settle-

---

**2.** The appeal also contends the jury verdict was excessive, and that the trial court abused its discretion by allowing an undisclosed expert witness to testify.

ment, and order Jackson to enter into a joint stipulation of dismissal. By its terms, the motion asked the trial court to order Jackson to sign the settlement agreement, which had already been signed by his attorney, and asked that the trial court order the Defendants to pay Jackson the agreed amount. In granting the Defendant's motion, the trial court order directed Jackson, "to take all measures necessary to consummate the settlement ... within 30 days." This did not dismiss the case, and left open what would happen if, as in fact turned out to be the case, Jackson did not comply with the directive to consummate the settlement.

A disposition of all claims requires more than the entry of a ruling on a motion without entry of judgment. *See Constantine v. City–County Council of Marion County,* 267 Ind. 279, 280, 369 N.E.2d 636, 637 (1977) (entry granting a motion to dismiss under Rule 12(B)(6) for failure to state a claim was not a final judgment, given the right under Trial Rule 12(B)(8) to replead); *compare Parrett v. Lebamoff,* 179 Ind.App. 25, 26–27, 383 N.E.2d 1107, 1108–09 (1979) (entry stating grounds for dismissal, dismissing claim, and awarding costs to plaintiff was a final judgment). A judgment that fails to determine damages is not final. *First Fed. Sav. & Loan Ass'n v. Stone,* 467 N.E.2d 1226, 1231 (Ind.Ct.App.1984).

The Court of Appeals concluded that even if the August 2 order was not a final judgment it met the requirements of an order appealable under Trial Rule 54(B) because "had it been carried out, [it] would have led to the entry of an ultimate determination ... between Jackson and the Appellants." *Georgos v. Jackson,* 762 N.E.2d 202, 206 (Ind.Ct.App.2002). We disagree that this is sufficient. Many orders, if carried out, will ultimately lead to a final judgment. Under this phrasing of the issue many orders would be at least arguably appealable even though they are plainly not final judgments and are subject to various contingencies, including whether the parties do in fact carry the order out. But even if it were the case that this order ended all disputes between Jackson and the Defendants, it would not be appealable under Rule 54(B). Trial Rule 54(B) certification of an order that disposes of less than the entire case must contain the magic language of the rule. This is intended to provide a bright line so there is no mistaking whether an interim order is or is not appealable. As we recently held in *Martin v. Amoco Oil Co.,* 696 N.E.2d 383 (Ind.1998), an order becomes final and appealable under Rule 54(B) "only by meeting the requirements of T.R. 54(B). These requirements are that the trial court, in writing, expressly determine that there is no just reason for delay and, in writing, expressly direct entry of judgment." *Id.* at 385. The trial court made no Rule 54(B) finding here. As a result the August 2 order was not final under Trial Rule 54.

Even though the trial court's August 2, 1999, ruling granting the Defendants' Motion to Enforce was an interlocutory order, it was arguably appealable as of right under Appellate Rule 14(A)(2) because it required the execution of a document. However, there is no requirement that an interlocutory appeal be taken, and Jackson may elect to wait until the end of litigation to raise the issue on appeal from a final judgment. *In re Newman,* 174 Ind.App. 537, 545–46, 369 N.E.2d 427, 432 (1977) (though party may have had an interlocutory appeal of right for payment of money, it was not waived and could be raised in appeal from final judgment).

For all of these reasons, the August 2, 1999, order was not required to be appealed and the issues Jackson raises are prop-

erly before us in this appeal from the final judgment entered after the jury trial.

## II. The Effect of Mediation Settlement Agreement

Jackson does not argue that his attorney lacked the actual authority to enter into a settlement at the mediation. Rather he contends that ADR Rule 2.7(B)(2), which requires the parties to be present at a mediation, rendered unenforceable any settlement in Jackson's absence. We agree that the rule required Jackson's presence, but do not agree that his absence invalidates his attorney's agreement to settle the case.

In *Koval v. Simon Telelect Inc.*, 693 N.E.2d 1299 (Ind.1998), this Court held that an attorney has the inherent authority to bind a client in an in court proceeding, and a mediation session under the ADR rules is "in court" for this purpose. *Id.* at 1306–07. Jackson attempts to distinguish *Koval* because *Koval* did not involve a mediation conducted in violation of the ADR rules. The "violation" Jackson cites is Jackson's own failure to attend the mediation. As Chief Judge Brook observed, a party may not take advantage of errors of its own making. Jackson further distinguishes *Koval* on the basis that *Koval* did not involve a mediation under the ADR rules. *Koval* expressly did not differentiate between settlement agreements made within or outside the scope of the ADR Rules. It was not clear from the record in *Koval*, which was a certified question from the federal court, "whether the mediation was ... administered ... pursuant to ... or ... wholly outside the rules." *Koval*, 693 N.E.2d at 1307 n.12. But the opinion in *Koval* made clear that the authority of the attorney depended on whether the proceeding was governed by the ADR Rules. If so, the proceeding is "in court" for purpose of the doctrine that an attorney appearing in court has inherent power to

settle the case. There is no dispute that the mediation was under the ADR Rules in this case. Accordingly, under *Koval*, the attorney at the mediation session had inherent authority to settle. But this presents no issue in Jackson's case because actual authority is conceded. The issue is not whether the attorney was authorized, but whether, despite that authority, the settlement is unenforceable because of Jackson's absence.

Indiana strongly favors settlement agreements. *Scott v. Randle*, 697 N.E.2d 60, 65 (Ind.Ct.App.1998). And it is established law that if a party agrees to settle a pending action, but then refuses to consummate his settlement agreement, the opposing party may obtain a judgment enforcing the agreement. *Klebes v. Forest Lake Corp.*, 607 N.E.2d 978, 982 (Ind.Ct.App.1993); *Brant Constr. Co. v. Lumen Constr. Inc.*, 515 N.E.2d 868, 876 (Ind.Ct.App.1988). Settlement agreements are governed by the same general principles of contract law as any other agreement. *Ind. State Highway Comm'n v. Curtis*, 704 N.E.2d 1015, 1018 (Ind.1998). Jackson argues for an exception to this principle for agency doctrines incident to settlement agreements reached at mediation sessions. Under basic principles of agency law Jackson is bound by the settlement agreement. The Restatement (Second) of Agency states that:

If an agent of a disclosed ... principal makes an authorized contract with a third person, the liability of the principal thereon depends upon the agreement between the agent and the other party as to the parties to the transaction.

*Restatement (Second) of Agency,* § 146 (1958). The Restatement further states that "[u]nless otherwise agreed, a disclosed ... principal is a party to a contract ... made by his agent within his authority." *Id.* at § 147. In this case it is undis-

puted that Jackson's attorney had the authority to settle, and of course Jackson, the principal, was disclosed.

▮▮▮ Jackson contends that an attorney's authority to bind the client to a settlement agreement is nevertheless constrained by ADR Rule 2.7. He contends that ADR Rule 2.7(B)(2) invalidates settlements entered into under mediations pursuant to ADR Rules if a party is not present and refuses to sign an agreement reached by the party's authorized attorney. We do not agree that Rule 2.7 suggests that result. The purposes of the requirement that parties and their attorneys be present at a mediation are several fold. They include assuring that the authority to settle is available at the mediation, but they also include facilitating settlement by creating an environment where the parties and their attorneys hopefully receive and appreciate the points of view of the other parties and the mediator. ADR 2.1 (role of mediator is to assist parties in "exploring areas of compromise, and finding points of agreement . . . ."); *State v. Carter,* 658 N.E.2d 618, 623 (Ind. Ct.App.1995) (goals of mediation include identifying areas of agreement and reducing misunderstandings). Thus, even if no settlement is agreed, the understandings reached may facilitate a settlement in the future. Attendance at the mediation may help to elevate the parties' sense of the fairness of the proceeding, and that purpose is frustrated if an agreement is reached in their absence. But to permit a party to avoid an agreement by failing to attend is to reward disregard of the rules. If an agreement is reached at the meeting, these purposes are fully served even with a party's unexcused absence. For that reason, and the strong policy in favor of settlements, we hold that although the agreement may be vulnerable to other attacks, if an attorney agrees in writing at a mediation session to settle a claim, neither the presence of the client nor ratification by the client is required to bind the client to the settlement agreement. The attorney faced with an absent client can of course refuse to agree. That risks exposure to the penalties for nonattendance or lack of authority that are provided in ADR Rule 2.10, but that course is ordinarily preferable to incurring an obligation on the part of the client to which the client did not agree. If, as here, the issue is not lack of authority, but a mistaken assumption that led the client to confer actual authority, the grounds for relief from that circumstance are found in bodies of law other than the ADR Rules.

Jackson also challenges the validity of the agreement because it was not signed by the parties. ADR Rule 2.7(E)(2) states that "[i]f an agreement is reached, in whole or in part, it shall be reduced to writing and signed by the parties and their counsel." This Court has emphasized the importance of reducing any agreement reached to a signed written agreement. In *Vernon v. Acton,* 732 N.E.2d 805 (Ind. 2000), we stated that:

> Requiring written agreements, signed by the parties, is more likely to maintain mediation as a viable avenue for clear and enduring dispute resolution rather than one leading to further uncertainty and conflict. Once the full assent of the parties is memorialized in a signed written agreement, the important goal of enforceability is achieved.

*Id.* at 810. The requirement of signature by the attorneys and parties is designed to avoid disputes over what was or was not agreed to at the mediation. Subsequent cases interpreting *Vernon* have reached the same conclusion. *Spencer v. Spencer,* 752 N.E.2d 661, 664 (Ind.Ct.App.2001); *Reno v. Haler,* 734 N.E.2d 1095, 1098 (Ind. Ct.App.2000). Thus there is no disputing

the importance of a signed settlement agreement.

■ The Rule's provision that the agreement is to be signed by both the attorney and the party is consistent with the requirement of ADR Rule 2.7(B) that both the attorney and the party are to be present. Nevertheless, where the agent of the party is cloaked with the authority to enter into the settlement agreement, and the party's presence is unexcused, the attorney's signature is sufficient. To hold otherwise would give an incentive to frustrate the mediation by boycott in hopes of renegotiating after the mediation in return for the signature of the absent party. That action would of course be sanctionable under ADR Rule 2.10, so it is not risk-free. But we see no reason to reward or create an incentive to disregard the rules by permitting the improperly absent party, Jackson, to turn his absence to his advantage. In any event, it seems that Jackson's presence at the mediation would have made no difference. At that time both Jackson and his attorney were under the impression that the policy limit was $100,000. Jackson offers no reason to believe that had Jackson been present at the mediation there would have been no agreement, or that he would not have signed the written settlement agreement along with his attorney.

We recognize that enforcing the settlement agreement gives Defendants' insurer a windfall due to opposing counsel's misunderstanding as to the applicable insurance limits. In this appeal the only issues raised are the effect of Jackson's absence from the mediation. We are not presented in this appeal with the contentions Jackson advanced in the trial court for avoiding the agreement based on that misunderstanding. We note, however, that because the August 2 order was not a final judgment, Defendants are not correct that any motion for "reconsideration"[3] needed to be filed within thirty days. *Hubbard v. Hubbard*, 690 N.E.2d 1219, 1221 (Ind.Ct.App. 1998) (a trial court may reconsider previous orders until final judgment is entered).

In sum, we hold that when an attorney attends a mediation under the ADR Rules and executes a settlement agreement, that is sufficient to bind the client who fails to attend without excuse.

### Conclusion

This case is remanded to the trial court with instructions to enter judgment pursuant to the terms of the settlement agreement.

SHEPARD, C.J., and DICKSON and SULLIVAN, JJ., concur.

RUCKER, J., concurs in result.

---

**3.** We understand this contention to be based on Trial Rule 59 and the time constraints applicable to a motion to correct errors. Defendants cite *Chapin v. Hulse*, 599 N.E.2d 217 (Ind.Ct.App.1992), which held that after the trial court denied a motion to correct errors it had no jurisdiction to entertain a motion to reconsider that denial. In Jackson's case, there was no motion to correct errors. If we view the motion denominated as a TR 60 motion to be in substance a motion to reconsider the August 2 order, it was properly before the trial court because the trial court retained jurisdiction after the interlocutory order and there is no time limit on motions to reconsider interlocutory orders. At the hearing on the Rule 60/reconsideration motion, Jackson conceded the issues Jackson originally advanced to avoid the agreement were correctly decided, and he does not present them in this appeal.