**R.W.M., Appellant,**

v.

**A.W.M., Appellee.**

No. 79A02–0905–CV–410.

Court of Appeals of Indiana.

May 14, 2010.

---

7. The victim was the child of Ruiz's cousin.  (Tr. at 32.)

Cynthia Phillips Smith, Lafayette, IN, Attorney for Appellant.

Jason W. Bennett, Bennett Boehning & Clary LLP, Lafayette, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

Appellant R.W.M. ("Father") appeals an order of the Tippecanoe Circuit Court on Appellee A.W.M.'s ("Mother") petition to establish paternity and to establish custody and support of their minor children, M.M. and W.M., Mother's plenary action and Father's petition for dissolution of marriage. While Father presents several issues for review, sua sponte, we find that the Court of Appeals of Indiana lacks jurisdiction in this case. We therefore dismiss this appeal without prejudice.

### Facts and Procedural History

On April 4, 1992, Mother and Father (collectively, "Parents") participated in a "Christian coverture marriage"[1] affirmation ceremony. However, they never obtained a valid marriage license and are not legally married. M.M. was born on January 5, 1999 and W.M. was born on September 12, 2000. Parents acknowledge that Father is the father of both children. Parents lived together from April 4, 1992 to December 2004.

After the parties separated in December 2004, Mother filed a juvenile paternity case in Tippecanoe Circuit Court to establish paternity, custody, and support, as well as a plenary case in Tippecanoe Superior Court for an accounting. Father filed a separate petition for dissolution of marriage in Tippecanoe Circuit Court with a petition for provisional orders and answered and counterclaimed in Mother's Superior Court plenary case.[2] All cases were consolidated for hearing and proceeded in Tippecanoe Circuit Court after Moth-

---

1. Coverture is "[t]he condition or state of a married woman. Sometimes used elliptically to describe the legal disability which formerly existed at common law from a state of coverture whereby the wife could not own property free from the husband's claim or control. Such restrictions were removed by state Mar-ried Woman's Property Acts." *Black's Law Dictionary* 366 (6th ed. 1990).

2. Father filed a petition for dissolution of marriage despite not being legally married to Mother.

er's Superior Court case requesting an accounting was transferred to the Circuit Court in 2005.

During the years that followed, many hearings were held to resolve procedural, case-management and substantive issues. For purposes of this appeal, the relevant series of notices and hearings began on February 11, 2008, when the first hearing notice was issued, stating: "[ ] The Court sets a hearing on all pending matters for 9:00 am, Tuesday, July 08, 2008 with one day allotted therefor[ ]. Copy to counsel." Appellee App. pp. 5–7.

When the July 8 hearing proved inadequate to the parties' needs, a second notice was issued continuing the hearing on the consolidated matters, stating: "[ ] The Court sets this cause for 9:00 am, Wednesday, July 23, 2008 with two hours allotted therefor[ ]. Copy to counsel." *Id.* at 8–10.

After the July 23 hearing proved inadequate to the parties' needs, the trial court issued a third notice of continued hearing, stating: "[ ] Hearing is conducted on all pending matters. There being insufficient time to conclude said hearing, the Court reassigns this cause for completion on Wednesday, August 27, 2008 at 1:30 p.m. with two hours allotted. Copy to counsel." *Id.* at 11–13.

When the August 27 setting proved inadequate to the parties' needs, the trial court issued the final relevant notice of continued hearing, stating: "[ ] Evidence is submitted. There being insufficient time to conclude the hearing set for this date, the Court reassigns this cause for further hearing for 10:30 am, Friday, November 21, 2008 with one half hour allotted therefor[ ]. Copy to counsel." *Id.* at 14–16.

After the November 21 hearing, the trial court immediately issued its summary order stating: "[ ] This being the time set for completion of the hearing on all pending

matters, evidence submitted and hearing concluded. The Court now takes this matter under advisement. Counsel to submit proposed orders by December 5, 2008. Copy to counsel." *Id.* at 17. After receiving proposed findings of facts and conclusions of law from the parties, the trial court issued its final order on January 5, 2009 as to all pending issues.

Father and Mother each filed a motion to correct error as to the January 5, 2009 order. The trial court set the hearing on the motions for April 2, 2009. The trial court held the hearing on April 2, 2009. On April 6, 2009, the trial court denied the parties' motions to correct error, determining that its January 5, 2009 Order "was a final order on all pending matters."

On May 1, 2009, the parties filed an Agreed Order setting forth the issues that Mother and Father believed remained pending. The trial court approved and signed the Agreed Order the same day. Father filed his notice of appeal on May 5, 2009.

## I. "Final Order on All Pending Matters"

■ The trial court notified both parties that the hearings would address all pending issues four times in each of the three consolidated cases before us. *See* Appellee's App. pp. 5, 6, 7, 11, 12, 13. After the fourth and final hearing, the trial court notified the parties that all pending matters had been taken under advisement and that proposed findings of fact and conclusions of law would be received. While the parties may argue that the trial court did not hear sufficient evidence, or did not hear the evidence that in retrospect they wish the court had heard about all of the issues that were pending, they were notified that the hearings would cover *all* pending issues. After receiving the parties' proposed findings and conclusions, the

trial court then entered judgment as to all pending issues.

However, despite its Herculean efforts, the trial court did not dispose of all of the pending issues before it in the January 5, 2009 judgment. For example, money held in escrow from the earlier sale of real estate was not fully distributed. Appellant's App. p. 5. According to the chronological case summary, on February 7, 2006, the trial court distributed only a portion of the proceeds from the sale of the parties' real estate. *Id.* The proceeds from the sale of the real estate totaled $122,040.07. *Id.* The trial court ordered that Father receive $50,000 and Mother receive $50,000. *Id.* The balance was ordered to remain in escrow until further order. *Id.* The trial court also stated that its order did not prejudice either party's claims to the entire amount and that it would determine the parties' rights to the proceeds in the future. *Id.* But the trial court did not address the escrow balance in its January 5, 2009 judgment.

This oversight was but one of many, surely caused in large part by the long and disjointed process of resolution of the parties' disputes over the course of approximately four years, couched in the legal conundrum of their Christian coverture marriage. Simply said, the January 5, 2009 judgment was not final and did not resolve all pending matters. In addition, the judgment did not include an express statement that "there is no just reason for delay" and direct entry of judgment "as to fewer than all the claims or parties" pursuant to Trial Rule 54(B). *See* Ind. Appellate Rule 2(H)(2) and Trial Rule 54(B).

## II. Agreed Order

▇ In an unusual step that speaks volumes about the complexity of the issues in these consolidated cases and their lack of resolution, after the trial court had denied their motions to correct error on April 6,

2009, on May 1, 2009, the parties filed a proposed agreed order. The order recited the parties' agreement that "there are still several matters pending before the Court ... including, but not limited to" a list of seven topics. In an even more unusual step, the trial court signed and entered the agreed order as filed on that same day.

▇ A trial court has inherent power to reconsider, vacate or modify any previous order, but only so long as the case has not proceeded to final judgment. *Hubbard v. Hubbard,* 690 N.E.2d 1219, 1221 (Ind.Ct.App.1998). Once a final judgment has been entered, and a motion to correct error has been filed, the trial court may not revise its order absent compliance with the requirements of Trial Rule 59. *Id.* Under Indiana Trial Rule 59(J)(3) and (4), the trial court, in ruling on the motion to correct error, may:

(3) alter, amend, modify or correct judgment; [or]

(4) amend or correct the findings or judgment as provided in Rule 52(B).

▇ Indiana Trial Rule 52(B) permits the trial court, upon its own motion or with or as part of the motion to correct error, to open the judgment or amend or make new findings and enter a new judgment, or any combination thereof. "Ample authority exists which permits a trial court, at least up to and including the ruling on the motion to correct error, to alter, amend or modify its judgment without limitation." *Ind. & Mich. Elec. Co. v. Harlan,* 504 N.E.2d 301, 308 (Ind.Ct.App.1987), *trans. denied.*

Here, the trial court denied both parties' motions to correct error on April 6, 2009, without consideration and modification under Trial Rule 59 or Trial Rule 52(B). On that date, the issues raised in the agreed order became res judicata, subject to modification only through the appeal process.

*See Richter v. Asbestos Insulating & Roofing,* 790 N.E.2d 1000, 1002 (Ind.Ct.App. 2003) ("[T]he doctrine of res judicata bars litigating a claim after a final judgment has been rendered in a prior action involving the same claim between the same parties or their privies."). Therefore, we conclude that the agreed order has no legal effect and Father's notice of appeal the next day even less.

## Conclusion

It is important to recall that the consolidated proceedings between these parties involve three case types, Mother's paternity action, Mother's plenary action and Father's dissolution action. The January 5, 2009 judgment was certainly an order that resolved child custody and support within the Mother's paternity action, but it was not a final appealable judgment from all of the consolidated, pending cases as it left one or more issues unresolved. *See* R. App. 5(A) and *Georgos v. Jackson,* 790 N.E.2d 448, 452 (Ind.2003). The January 5, 2009 judgment was only an interlocutory order on child custody and support that was neither certified as appealable by the trial court nor accepted as such by our court. Ind. Appellate Rule 14(B). Therefore, we do not have discretionary jurisdiction to review the judgment. *See Taylor v. Jacobs,* 864 N.E.2d 462 (Ind.Ct.App. 2007).

This appeal is now therefore dismissed without prejudice.

BARNES, J., and BROWN, J., concur.