**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JAMES G. ROBINSON**
Robinson, Lipnickey & Jones Co, LPA
Oxford, Ohio

ATTORNEYS FOR APPELLEE:

**JAMES R. WILLIAMS**
**NICHOLAS M. TOKAR**
Muncie, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CAROL RAPER, | ) | |
| Executor of the Estate of Timothy Raper, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 81A01-1206-TR-262 |
| | ) | |
| JILL A. HABER, DARRELL HARVEY, | ) | |
| and JANE HARVEY, | ) | |
| | ) | |
| Appellees-Plaintiffs. | ) | |

APPEAL FROM THE UNION CIRCUIT COURT
The Honorable Matthew R. Cox, Judge
Cause No. 81C01-1106-TR-9

**May 6, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

## STATEMENT OF THE CASE

This appeal involves a family dispute among Irene M. Raper's ("Irene") three children—Timothy L. Raper ("Raper"), Jill Ann Haber ("Haber"), and Jane Harvey ("Harvey")—surrounding the termination of a trust set up for Haber under the Irene M. Raper Revocable Trust ("the Trust"). Harvey and her husband, Darrell Harvey ("Darrell"), filed a petition to terminate the Trust, which was granted by the trial court. Later, Raper filed a petition to intervene under Trial Rule 24 and sought to set aside the order terminating the Trust, which the trial court denied. Carol L. Raper ("Carol"), as Executor of the Estate of Timothy L. Raper,[1] (collectively, "Raper") now appeals the trial court's denial of Raper's motion to intervene. Because the order ruling on Raper's motion to intervene was not a final judgment under Trial Rule 54(B) or an appealable interlocutory order, we dismiss this appeal *sua sponte*.

We dismiss this appeal.

## ISSUE

Whether the trial court erred by denying Raper's motion to intervene.

## FACTS

On September 4, 1996, Irene established the Trust for her own benefit.[2] Upon Irene's death, the remainder of the Trust—which included her shares of stock in Raper Farms, Inc.—was to be distributed to her three children, Raper, Harvey, and Haber.

---

[1] Raper initiated this appeal but died, during the pendency of the appeal, on July 12, 2012. Pursuant to Appellate Rule 17(B), Carol was substituted as Appellant for purposes of this appeal.

[2] Irene was named as both "Grantor" and "Trustee." (App. 21).

2

Irene amended the Trust on September 9, 1998 ("Amendment #1"), April 1, 2006 ("Amendment #2"), and December 23, 2008 ("Amendment #3"). In each of these amendments, Irene amended Subsection 3.03 pertaining to Payments Upon Grantor's Death. In Amendment #2, Irene added a provision that Haber's distribution from the Trust after Irene's death would be held in trust for Haber and would be used to provide "supplemental care" for Haber "in addition to the benefits she otherwise receives as a result of her handicap or disability[3] from any local, state, or federal government[.]" (App. 34).

In Amendment #3, Irene kept the provision calling for a trust to be established for Haber's distribution of the Trust and named Harvey and Raper as remainder beneficiaries of Haber's distribution. Amendment #3 also named Raper as Successor Trustee and gave him "sole, absolute, and uncontrolled discretion" about whether or not to make distributions for Haber's benefit. Amendment #3 also contained the following relevant provisions:

> iii. In the event the Successor Trustee is requested to release principal or income of the fund to or on behalf of **JILL ANNE HABER** to pay for benefits or services that public assistance is otherwise authorized to provide for her, were it not for the existence of this fund, or in the event that the Successor Trustee is requested to petition a court or any other administrative agency for the release of principal or income, from this fund, for this purpose, the Successor Trustee is authorized to deny such request and is authorized, in his sole discretion, to take whatever administrative or judicial steps may be necessary to continue the public assistance program eligibility of **JILL ANNE HABER**, including obtaining instructions from a court of competent jurisdiction ruling that the corpus of her fund is not available for her for such eligibility purposes. Any expense of the

---

3 Haber had apparently been diagnosed with bipolar disorder.

Successor Trustee in this regard, including reasonable attorney's fees, shall be a proper charge against this fund.

\* \* \* \* \*

     v. If there is a determination, by a Court or administrative agency that this fund, is available to, or a countable resource of **JILL ANNE HABER** in connection with her eligibility for a government benefit (including but not limited to Medicaid, SSI, or subsequent programs of similar type), the Successor Trustee shall terminate this trust designated for **JILL ANNE HABER** and distribute the remaining assets there, in the manner set forth in f. below.

(App. 39). Upon a termination of Haber's trust under the specific provision in subsection v., the Trust provided that Haber's share was to be distributed as if Haber were dead and would be distributed equally to Raper and Harvey.[4]

Irene died on February 18, 2010. Pursuant to the Trust, Raper and Harvey received their share of the residue and remainder of the Trust while Haber's share remained in trust. In September 2010, Raper, Harvey, and Haber participated in mediation surrounding their disputes regarding the Trust, Raper's role as Trustee, and the division of Raper Farms. In their mediation statement, Harvey and Haber indicated that they were going to file a petition to terminate the Trust if all issues were not resolved in the mediation. Raper—individually and as Trustee of the Trust—and Harvey and Haber entered into a mediation agreement, in which they agreed to divide the real estate owned by Raper Farms between the three siblings, and they agreed that a bank would replace Raper as Trustee.

---

[4] If Raper died prior to Haber, the Trust provided that his distribution would be divided between Carol Raper and Adam J. Raper. If Harvey died prior to Haber, the Trust provided that her distribution would be divided between Darrell Harvey, Travis Harvey, and Haylee Harvey.

4

On June 24, 2011, Harvey and her husband Darrell, as co-conservators of the estate and person of Haber, filed a petition to terminate the Trust pursuant to Indiana Code § 30-4-3-24.4, which permits a trial court to terminate a trust based upon certain conditions. Specifically, Harvey and Darrell asserted that the Trust should be terminated because circumstances had not been anticipated by the settlor or because the purpose of the Trust had been fulfilled. In their petition, they stated that "the settlor of the Trust intended her children to be treated equally" but asserted that the amendments to the Trust—which "expressly create[d] a special needs trust for Haber's share" of the Trust remains following Irene's death—allowed for no distributions to be made to Haber. (App. 9). They also asserted that Irene "mistakenly believed that Haber was the recipient of need-based governmental aid" and had established a trust for Haber upon the "mistaken belief" that it was necessary to protect Haber's right to receive government assistance. Because Haber did not receive need-based governmental aid,[5] they asked that the Trust be terminated and that the corpus be distributed to Haber. The trial court granted the motion and terminated the Trust, finding that "the Trust was mistakenly drafted as a 'special needs trust'" and that "in order to fulfill the intent of the Settlor, the Trust should be terminated." (App. 11).

On March 7, 2012, Raper filed a motion to intervene pursuant to Trial Rule 24(A)(2). In his motion, Raper presented the arguments he would make if allowed to intervene, including a request that the trial court set aside the order to terminate under

---

[5] Harvey's petition to terminate provides that Haber is recipient of Social Security Disability Insurance ("SSDI") and Medicare based on SSDI, neither of which was need-based or affected by a recipient's other income or assets.

5

Trial Rule 60(B) and a request for attorney fees. Raper also attached an affidavit to his motion, and in the affidavit, he made assertions about Irene's intentions for the Trust.

Thereafter, Harvey and Haber filed their response to Raper's motion to intervene.[6] In their response, Harvey and Haber moved the trial court to strike Raper's affidavit, arguing that it should be stricken because it was hearsay and violated the Dead Man's Statute, Indiana Code § 34-45-2-4.

On May 15, 2012, the trial court entered an order denying Raper's motion to intervene. Despite denying Raper's motion to intervene, the trial court also ruled on the merits of Raper's arguments as if he were allowed to intervene as a party and determined that Raper was not entitled to relief or attorney fees. The trial court did not rule on Harvey and Haber's motion to strike Raper's affidavit.[7] Raper now appeals.

## DECISION

Raper argues that the trial court erred by denying his motion to intervene under Trial Rule 24(A) and by denying his motion for relief from judgment under Trial Rule 60(B). "'Trial Rule 24(C) expressly recognizes the right of a party to intervene after judgment for the purposes of presenting a motion under Trial Rule 60.'" *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 812 (Ind. 2012) (quoting *State Farm Mut. Auto. Ins. Co. v. Hughes*, 808 N.E.2d 112, 116 (Ind. Ct. App. 2004)), *reh'g denied*. However, a party

---

[6] Raper challenges the timeliness of Harvey and Haber's response; however, given our disposition of this appeal, we need not address that challenge.

[7] Harvey and Haber have now filed with this Court a motion to strike Raper's affidavit, arguing that it should be stricken because it was hearsay and violated the Dead Man's Statute. Given our disposition of this appeal, we deny their motion as moot by separate order.

seeking to intervene after judgment under Rule 24(C) must first meet the requirements of either Rule 24(A) or (B).

Here, following the trial court's judgment terminating the Trust, Raper sought to intervene, arguing that he was entitled to intervene as a matter of right under Trial Rule 24(A)(2). The trial court denied Raper's motion, and Raper now seeks to appeal that order. Although not raised by the parties, we must first determine whether we have appellate jurisdiction over the trial court's order denying the motion to intervene. *See Georgos v. Jackson*, 790 N.E.2d 448, 451 (Ind. 2003) ("[T]he lack of appellate jurisdiction can be raised at any time, and if the parties do not question subject matter jurisdiction, the appellate court may consider the issue sua sponte."), *reh'g denied*.

This Court has jurisdiction in all appeals from final judgments. Ind. Appellate Rule 5(A). Trial Rule 24(C) expressly provides that a trial "court's determination upon a motion to intervene *shall be interlocutory for all purposes unless made final under Trial Rule 54(B)*." (Emphasis added). A judgment is a final judgment under Trial Rule 54(B) if the trial court "in writing expressly determines that there is no just reason for delay, and in writing expressly directs entry of judgment[.]" Trial Rule 54(B); *see also* App. R. 2(H)(2).

Our Indiana Supreme Court has established a "bright line" rule that requires strict compliance with the requirements of Trial Rule 54(B) to make an order appealable under that rule. *Martin v. Amoco Oil Co.*, 696 N.E.2d 383, 385 (Ind. 1998), *cert. denied*. Indeed, "an order becomes final and appealable under Rule 54(B) 'only by meeting the requirements of T.R. 54(B)[,]'" which are "'that the trial court, in writing, expressly

determine that there is no just reason for delay and, in writing, expressly direct entry of judgment.'" *Georgos*, 790 N.E.2d at 452 (quoting *Martin*, 696 N.E.2d at 385). In other words, an order made final under Trial Rule 54(B) must contain the "magic language" of the rule. *Georgos*, 790 N.E.2d at 452.

Here, the trial court's order provided that the order "shall be considered a final appealable order." (App. 7). However, contrary to the trial court's assertion, the order was not a final, appealable order because it did not contain the "magic language" of Trial Rule 54(B). *See, e.g.*, *Ramsey v. Moore*, 959 N.E.2d 246, 253 (Ind. 2012) (determining that part of a trial court's order that did not contain the "magic language" of Trial Rule 54(B) was not a final appealable judgment under Appellate Rule 2(H)(2)); *Georgos*, 790 N.E.2d at 451 (explaining that a trial court "cannot confer appellate jurisdiction over an order that is not appealable either as a final judgment or under Trial Rule 54(B)"); *In re Estate of Botkins*, 970 N.E.2d 164, 167 (Ind. Ct. App. 2012) (holding that trial court's order stating that the order was "final and appealable" did not make it so and was not a final judgment because it "did not comply with the dictates of Trial Rule 54(B)"); *Cincinnati Ins. Co. v. Davis*, 860 N.E.2d 915, 921 (Ind. Ct. App. 2007) (holding that an order stating "as there now remain no pending issues, this shall be considered a final, appealable order" did not meet the requirement of Trial Rule 54(B) and was not a final judgment under Appellate Rule 2(H)).

Because the trial court's order denying Raper's Trial Rule 24 motion to intervene was not a final judgment under Trial Rule 54(B), it remains an interlocutory order, *see* Trial Rule 24(C), and can only be appealed if it is an *appealable* interlocutory order. *See*

8

*Bacon v. Bacon*, 877 N.E.2d 801, 804 (Ind. Ct. App. 2007), *reh'g denied*, *trans. denied*. Indeed, this Court has jurisdiction "'over appeals of interlocutory orders under [Appellate] Rule 14.'" *Id.* (quoting App. R. 5(B)). Here, however, the trial court's order denying Raper's motion to intervene is not appealable as of right pursuant to Appellate Rule 14(A), and there was no request that the trial court certify its ruling for discretionary interlocutory appeal and no request for this Court to accept jurisdiction pursuant to Appellate Rule 14(B). Accordingly, it was not an appealable interlocutory order.

Because the trial court's order is not a final appealable order or an appealable interlocutory order, we do not have jurisdiction and must dismiss this appeal.[8]

Dismissed.

ROBB, C.J., and MAY, J., concur.

---

[8] We recognize that the trial court also ruled on Raper's request to set aside the termination the Trust made pursuant to Trial Rule 60(B) and that an order denying relief under Rule 60(B) shall be considered a final judgment. *See* Trial Rule 60(C); Appellate Rule 2(H)(3). Here, however, because the trial court denied Raper's Trial Rule 24 motion to intervene, he was not a party; therefore, the trial court's ruling on the merits of his Trial Rule 60(B) motion was unnecessary and would be considered surplusage or in the vein of dicta. Stated differently, the trial court cannot bypass the interlocutory nature of a Trial Rule 24 ruling and the mandates of Trial Rule 54(B) by deciding other issues on the merits and calling an order final and appealable. *See Georgos*, 790 N.E.2d at 451 (explaining that a trial court "cannot confer appellate jurisdiction over an order that is not appealable either as a final judgment or under Trial Rule 54(B)").