**FILED**

Oct 18 2017, 10:56 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Tony H. Abbott | Donald E. Morgan |
| Indianapolis, Indiana | Melissa Hayden Kramer |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

Broad Ripple Property Group, LLC,

*Appellant-Defendant,*

v.

City of Indianapolis,

*Appellee-Plaintiff*

October 18, 2017

Court of Appeals Case No.
49A04-1608-OV-1773

Appeal from the Marion Superior Court

The Honorable Cynthia J. Ayers, Judge

Trial Court Cause No.
49D04-1509-OV-31862

**Altice, Judge.**

## Case Summary

[1] Broad Ripple Property Group (BRPG) leased space in commercial real estate at 5306 N. Keystone Avenue (the Property) in Indianapolis to Weihong Tan Kreiter, an individual doing business as Sunrise Therapy Spa (Tenant). From that location, Tenant operated an unlicensed massage establishment in

violation of the Revised Code of the Consolidated City of Indianapolis and Marion County (Revised Code) § 912-2. BRPG had no knowledge that a license was required for such use of the Property and was unaware of any illegal or illicit activity occurring on the Property.

[2] Two undercover IMPD officers made separate visits to Tenant's unlicensed massage establishment and were offered genital touching in violation of Revised Code § 912-6(f). IMPD subsequently shut down Tenant's business and notified BRPG, who in turn promptly terminated Tenant's lease.

[3] The City of Indianapolis (the City) filed a complaint against BRPG for damages and injunctive relief, alleging violations of Revised Code §§ 912-2 and 912-6(f). With respect to damages, the City sought an award of compensatory damages, punitive damages, and fines against BRPG. Shortly after the complaint was filed, the City and BRPG entered into an agreed preliminary injunction to ensure that the Property would not be used during the pending litigation as a massage establishment without a valid license and would not be used for illicit purposes. The parties then filed competing motions for summary judgment, and the trial court granted summary judgment in favor of the City on all counts.

[4] BRPG appeals from the entry of summary judgment and argues that it was entitled to summary judgment. The City has filed a motion to dismiss the appeal, arguing that the issue is moot. Thus, we are presented in this appeal with the following issues:

    1) Should we dismiss the appeal as moot?

2) Is BRPG, as owner/lessor of the Property, liable under the Revised Code for Tenant's operation of an unlicensed massage establishment?

We reverse and remand.[1]

## Facts & Procedural History

The facts are not in dispute. On November 8, 2014, BRPG entered into a commercial lease agreement with Tenant, with an understanding that Tenant intended to operate a "therapy and spa business" at the Property. *Appellant's Appendix Vol. 2* at 202-03. Tenant was prohibited by the terms of the lease agreement from using the Property for any other purpose without prior written consent. BRPG was unaware that a license would be required for use of the Property as a massage establishment and did not require Tenant to produce a license prior to entering into the lease agreement.[2] The lease agreement, however, required Tenant to comply with all rules, regulations, and laws in its use and occupancy of the premises. Aside from $1300 monthly rental payments, BRPG did not receive financial benefits from Tenant's business. Further, BRPG did not exercise control over Tenant's day-to-day operations and its only business relationship with Tenant was as landlord-tenant.

---

[1] Oral argument was held in Indianapolis on September 26, 2017. We commend counsel for both parties for the quality of their written and oral advocacy.

[2] BRPG never required its commercial tenants to present verification or copies of licenses and/or permits needed to operate businesses or commercial enterprises on properties owned by BRPG.

[7]  Tenant proceeded to operate an unlicensed massage establishment at the Property. On September 11, 2015, IMPD began to conduct an undercover investigation of Tenant's business activities and operations at the Property. The investigation revealed that patrons were being offered genital touching in exchange for additional compensation. Thereafter, the City shut down Tenant's unlicensed massage establishment. BRPG was unaware of any illicit activity occurring on the Property or of Tenant's lack of a required license to operate the massage establishment. Upon learning of Tenant's violations, BRPG promptly terminated the lease agreement.

[8]  On September 25, 2015, the City filed the instant action against BRPG. The complaint alleged the violation of two ordinances regulating massage establishments – Revised Code §§ 912-2 and 912-6(f). Specifically, the City alleged, among other things, that BRPG was "actively operating, conducting, maintaining, and/or allowing a massage establishment at the [Property] without a valid license therefor from the licensing administrator in violation of Section 912-2 of the Revised Code." *Appellant's Appendix Vol. 2* at 14. The City also alleged that BRPG was "allowing, promoting, maintaining, conducting, managing, operating and facilitating acts that require the touching of a patron's genitals in violation of Section 912-6(f) of the Revised Code." *Id*. at 16. As a result of these alleged violations, the City sought preliminary and permanent injunctive relief and damages, including fines, compensatory damages, and punitive damages. The day that the complaint was filed, the trial court entered

a temporary restraining order and set the cause for a preliminary injunction hearing for October 7, 2015.

[9] In lieu of the hearing, the parties submitted an agreed preliminary injunction to the court, which enjoined BRPG and its tenants, while the cause was pending, from allowing the operation of an unlicensed massage establishment and from knowingly allowing activities that involve the touching of a patron's genitals or any other illegal activity at the Property. The parties also requested that the matter be set for a pre-trial status hearing, at which they would notify the court regarding the status of the litigation, discovery efforts, early dispute resolution discussions, and the need for a formal case management order and trial setting. The trial court accepted the agreement and held a pretrial conference on December 7, 2015. Shortly thereafter, trial was set for June 24, 2016, and later continued on the court's own motion to July 13, 2016.

[10] On April 19, 2016, the City filed a motion for summary judgment. It argued that as the property owner BRPG was responsible for the violations of the Revised Code that occurred on the Property. BRPG filed a competing motion for summary judgment on May 2, 2016, arguing that because it did not have any ownership interest in or control over Tenant's business, BRPG did not, as a matter of law, directly or indirectly operate, conduct, or maintain a massage establishment without a license.[3] BRPG indicated in its summary judgment

---

[3] In support of its motion for summary judgment, BRPG designated the affidavit of Richard Trimpe, an expert in the commercial real estate industry in Indiana. Trimpe indicated that it was not common practice

filings that while it did not oppose the temporary restraining order becoming permanent, it did oppose any finding that it had violated the ordinances as alleged in the complaint, as well as the assessment of damages or fines.

A brief summary judgment hearing was held on June 27, 2016, at which a joint stipulation of facts was submitted and arguments were made by the parties. On August 1, 2016, the court granted summary judgment in favor of the City on all claims. In its order, however, the court did not set a hearing regarding damages and fines that were requested in Count II of the complaint, nor did it set out the terms of the permanent injunction. BRPG sought clarification from the trial court regarding the finality of the order. As a result, the trial court entered an amended order on August 3, 2016, finding "no just reason for delay", entering judgment in favor of the City on all counts of the complaint, and indicating that the order "constitutes a final judgment in the case." *Appellant's Appendix Vol. 2* at 8-9. Accordingly, BRPG initiated this appeal. BRPG contends that it, rather than the City, is entitled to summary judgment.

## Discussion

### 1. Mootness

The City has filed a motion to dismiss the appeal as moot. It asserts that even though the trial court entered judgment for the City, the court awarded no

---

for a commercial landlord to verify that a prospective or existing lessee has obtained or renewed the governmental licenses, permits, and approvals related to the lessee's business.

damages nor did it convert the preliminary injunction into a permanent injunction. Accordingly, the City contends that this court is unable to provide effective relief on appeal. *See Larkin v. State*, 43 N.E.3d 1281, 1286 (Ind. Ct. App. 2015) (an issue will be deemed moot when we are unable to provide effective relief).

[13] The City's position is tenuous. The trial court expressly granted summary judgment in favor of the City *on all counts* of the complaint. The complaint sought a permanent injunction against BRPG, as well as fines, compensatory damages, and punitive damages. Indeed, the City was not satisfied with the agreed preliminary injunction and continued to pursue the matter.

[14] After the trial court issued its summary judgment order in favor of the City on all counts, the amount of damages remained undetermined. Thus, the August 1, 2016 order was not in fact final. *See Georgos v. Jackson*, 790 N.E.2d 448, 451 (Ind. 2003) (observing that a final judgment disposes of all issues as to all parties and leaves nothing for future determination). We remind the City that "[a] judgment that fails to determine damages is not final." *Id*. at 452.

[15] The trial court's use of the magic language of Ind. Trial Rules 54(B) and 56(C) in its amended order had the effect of making the otherwise interlocutory order final and appealable.[4] *See Georgos*, 790 N.E.2d at 452 (the requirement that a

---

[4] The trial court's amended order provided in relevant part: "there being no just reason for delay, judgment is entered for [the City] on its Motion for Summary Judgment on all Counts of the Complaint." *Appellant's Appendix Vol. 2* at 8-9.

court use the "magic language of the rule" is "intended to provide a bright line so there is no mistaking whether an interim order is or is not appealable"); *Martin v. Amoco Oil Co.*, 696 N.E.2d 383, 385 (Ind. 1998) ("A judgment or order as to less than all of the issues…in an action may become final only by meeting the requirements of T.R. 54(B)"). The issue(s) not resolved by the judgment, however, remains ripe for determination by the trial court. In other words, BRPG remained subject, at a minimum, to a hearing on damages and fines. Because we are able to provide effective relief in this case, the issue presented in BRPG's appeal is not moot.

## 2. Summary Judgment

### Standard of Review

[16] We review summary judgment de novo and apply the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). Summary judgment is appropriate where the designated evidence establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id*. It is a desirable tool to allow courts to dispose of cases, like the instant case, where only legal issues exist. *Id*.

[17] The facts in this case are undisputed and our consideration of this appeal entails the interpretation of provisions of the Revised Code. When construing ordinances, we apply the rules applicable to statutory construction. *City of Indianapolis v. Campbell*, 792 N.E.2d 620, 624 (Ind. Ct. App. 2003). The primary rule of statutory construction is to ascertain and give effect to the intent

of the drafters. *FLM, LLC v. Metro. Dev. Comm'n of Marion Cty.*, 76 N.E.3d 952, 957 (Ind. Ct. App. 2017), *trans. denied*. The best evidence of that intent is the language of the ordinance, and all words must be given their plain and ordinary meaning unless otherwise indicated by the ordinance. *Id*. We will attempt to harmonize statutory provisions, but when they necessarily conflict, the specific provision takes priority over the general provision. *See Robinson v. Wroblewski*, 704 N.E.2d 467, 475 (Ind. 1998); *Medical Disposal Servs., Inc. v. Ind. Dep't of Envtl. Mgmt.*, 669 N.E.2d 1054, 1059 (Ind. Ct. App. 1996) ("[w]hen one statute covers a particular subject in general terms and another statute covers the same subject in a more detailed or specific manner, then we first attempt to harmonize the statutes, but if the statutes are irreconcilably conflicting the more detailed statute prevails"), *trans. denied*.

[18]     The City's complaint alleged the violation of the following two ordinances under the umbrella of Title IV, Chapter 912 of the Revised Code, which specifically regulates massage establishments.[5]

> **Sec. 912-2. – License required.**
>
> It is unlawful for a person or firm to operate, conduct or maintain a massage establishment in the city without first having obtained a license therefor from the license administrator.

---

[5] Title IV includes specific registration, permitting, and licensing provisions for a variety of other businesses, some of which include adult entertainment (Chapter 807), alarm businesses (Chapter 811), amusement machine locations (Chapter 831), kennel/pet shop/stables (Chapter 836), ticket brokers (Chapter 841), contractors/skilled trades (Chapter 875), and tobacco businesses (Chapter 988).

**Sec. 912-6. – Operation**

\*\*\*

(f) No person in a massage establishment shall initiate or solicit, verbally or nonverbally, sexual activity with a client.

[19] At oral argument, the City candidly conceded that there was no basis for holding BRPG liable for Tenant's violation of § 912-6. The City has also acknowledged that when read in isolation § 912-2 "does not lead inexorably to the conclusion that a commercial landlord is liable when its tenant operates an unlicensed massage business." *Appellee's Brief* at 10. The City asserts, however, that when § 912-2 is read in harmony with § 801-301(a), it becomes clear that property owners such as BRPG are liable for violations occurring on their property.

[20] The general licensing provisions of Title IV are set out in Chapter 801 of the Revised Code. Section 801-102 indicates that the "provisions of this chapter shall apply to all businesses that are required under the following chapters of this title to be licensed by the license administrator". Additionally, the City directs us to two other general provisions:

**Sec. 801-101. – Purpose of Title IV of the Code.**

It is the purpose of Title IV of the Code to license certain businesses for the protection of the public welfare. The provisions of this title should be liberally construed to that end.

**Sec. 801-301 – License required; evidence of doing business; applicability to nonresidents.**

(a) It shall be unlawful for a person, either directly or indirectly, to conduct or maintain any business or premises for which a license is required by this Code, unless a valid license has been obtained therefor from the license administrator and kept in effect at all times….

The City argues that § 801-301 extends liability to a property owner even where the owner's only connection to the unlicensed business is as landlord and the owner has no knowledge of its tenant's violations of the licensing ordinances. Specifically, the City contends that the undisputed facts establish that BRPG indirectly maintained Tenant's business[6] and directly maintained the premises. Thus, according to the City, BRPG is liable for the violations of § 912-2.

We reject the City's overly-broad interpretation of the relevant ordinances and agree with BRPG that the City's proposed interpretation and application of the ordinances essentially make a commercial landlord strictly liable for its tenant's violation of the various licensing ordinances. Nothing in Title IV requires a property owner to verify that applicable permits and licenses have been obtained before leasing property to a regulated business. Moreover, the City's interpretation would require a commercial landlord, big or small, to constantly

---

[6] With respect to indirectly maintaining Tenant's business, the City notes that the lease agreement required Tenant to keep the business open during normal business hours and not cease operations without express written consent of BRPG. Further, the agreement provided the Property would be used solely by Tenant for the operation of Tenant's therapy and spa business.

monitor its tenants to ensure that all permits and licenses are kept current. As Trimpe's expert affidavit indicates, the custom within the local commercial leasing industry is that tenants are required by the lease terms (as in this case) to comply with all laws and regulations for the operation of their businesses but that landlords do not verify or monitor tenant's business permits and licenses.

[23] In the instant case, BRPG did not "operate, conduct, or maintain a massage establishment" within the common and ordinary meaning of those words. Indeed, the undisputed facts establish that BRPG was not in a business relationship with Tenant, except that of landlord. BRPG had no knowledge of the ordinance violations being committed by Tenant.[7] Moreover, the duty to apply for the license was clearly Tenant's, not BRPG's. Recognizing these realities, the City asks us to interpret § 912-2 in light of § 801-301.

[24] We do not find that these two provisions are in conflict with one another. Like § 912-2, § 801-301(a) speaks in terms of "conduct" or "maintain" the business or premises for which a license is required (*i.e.*, the massage establishment). Unlike § 912-2, the provision references "directly or indirectly" conducting or maintaining but that addition cannot reasonably be read to impose liability on a commercial landlord with no financial ties to the regulated business.[8]

---

[7] Even if Tenant's actions rose to the level of a nuisance, BRPG would be liable under the common law only if it had actual knowledge. *See Neal v. Cure*, 937 N.E.2d 1227, 1232-33 (Ind. Ct. App. 2010), *trans. denied*.

[8] Revised Code § 801-102 (b) defines "financial interest" to mean:

    (1)   Any of the legal rights of ownership or beneficial interest in the profits of a business; or

[25] The purpose of Title IV of the Revised Code is to "license certain businesses for the protection of the public welfare." Revised Code § 801-101. Further, the general provisions regarding licenses found in Chapter 801 "apply to *all businesses* that are required under the following chapters of this title to be licensed". Revised Code § 801-102(a) (emphasis supplied). Section 801-102 defines "business" to include "any kind of vocation, occupation, profession, enterprise or any kind of activity (together with any equipment, vehicles or other personal property, and any premises used therein) that is conducted, directly or indirectly in the city." The same provision defines "premises" as "all real estate (including structures and fixtures affixed thereto) used in a business, together with all equipment, vehicles and other personal property used in that business."

[26] Following the purpose, applicability, and definitional provisions (Article I), Chapter 801 then sets out detailed licensing procedures (Article II) and licensing requirements and conditions (Article III). The focus throughout is on the licensee[9] and the business being regulated. As set out above, one of these many provisions makes it "unlawful for a person, either directly or indirectly, to

---

(2) Any portion of the legal rights of ownership in any partnership, corporation or other legal entity having any portion of such rights or beneficial interest; equal to or greater than five (5) percent of the whole. "Financial interest" includes, but is not limited to, the interest held by stockholders and officers of corporations or similar business entities.

[9] Revised Code § 801-304 provides that whenever an agent or employee of a licensee "commits an act or omission in violation of the provisions of this Code, the act or omission shall be deemed to be that of the license, and the licensee shall be subject to the same penalties and enforcement actions as if the act or omission had been committed personally by the licensee."

conduct or maintain any business or premises for which a license is required by this Code, unless a valid license has been obtained…and kept in effect at all times". Revised Code § 801-803(a). We cannot agree with the City that this one provision clearly subjects commercial landlords such as BRPG to liability for licensing violations committed by their tenants, and when read in context with the entire regulatory scheme, the unreasonableness of the City's interpretation is apparent.

[27] Accordingly, we conclude that the trial court erred in granting summary judgment in favor of the City and in denying BRPG's motion for summary judgment. The trial court is directed on remand to enter summary judgment in favor of BRPG.

[28] Judgment reversed and remanded with instructions.

Kirsch, J. and Mathias, J., concur.